KESTERSON et al. v. LA MOINE LUMBER & TRADING CO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

No. 2,038.

1. PLEADING (§ 236*)—AMENDMENT—DISCRETION.

Where, in an action for breach of contract, the original complaint contained no allegation of performance on the part of plaintiff's assignor, it was within the discretion of the trial court to permit an amendment on the trial to cure the defect.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 601; Dec. Dig. § 236.*]

2. APPEAL AND ERROR (§ 263*)—INSTRUCTIONS—EXCEPTION.

Where no exception was taken to an instruction withdrawing the issue of the right of plaintiff's assignor, a foreign corporation, to do business in Oregon where the contract sued on was made, from the jury, the question was not reviewable on writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1532; Dec. Dig. § 263.*]

3. CONTRACTS (§ 176*)—INSTRUCTIONS—SALE OF LUMBER.

A contract for the sale of the cut of defendant's lumber mill provided that defendant agreed to deliver to plaintiff's assignor and the latter agreed to receive at W. station, J. county, Or., the defendant's entire cut of lumber for the season of 1906, etc., all to be delivered by defendant on or before November 15, 1906, at such station under specified terms and conditions, and that defendant's assignor was to pay for the lumber within 10 days after delivery at W. station on siding subject to 2 per cent. discount. *Held*, that the court properly construed the contract itself, and charged that all the lumber embraced by it was to be delivered by defendant free on board cars at the railroad siding at W. station, and that payments were to be due 10 days thereafter.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 176.*]

In Error to the Circuit Court of the United States for the District of Oregon.

Action by the La Moine Lumber & Trading Company against H. G. Kesterson and another. Judgment for plaintiff, and defendants bring error. Affirmed.

See, also, 171 Fed. 980.

The defendant in error is a California corporation, and the assignee of another California corporation styled Griffin & Skelley Company of all of the rights of the latter corporation growing out of a certain written contract made on the 13th day of November, 1905, between it and the plaintiffs in error, who are residents and citizens of the state of Oregon and manufacturers of lumber. Under the firm name of Kesterson & Silsby, they constitute the first party to the contract, and the Griffin & Skelley Company the second party thereto. The provisions of the contract, so far as necessary to be stated, are as follows:

"That the said party of the first part does hereby undertake and agree to deliver to the said party of the second part, and the said party of the second part does hereby undertake and agree to receive at Woodville Station, county of Jackson, state of Oregon, all of and the entire cut of lumber of the party of the first part, for the season of 1906, the said cut and delivery to be not less than five million (5,000,000) feet, nor more than seven million (7,000,000) feet, for which the said party of the first part is to receive nine (9) dollars per thousand feet for box lumber and #3 shop, eleven and 50/100 (11.50) dollars per thousand feet for #2 shop, and twenty (20)

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dollars per thousand feet of #1 shop and better, as the purchase price thereof, which the said party of the second part agrees to pay. All of said lumber to be delivered by the party of the first part on or before the 15th day of November, 1906, at Woodville Station, county of Jackson, state of Oregon, under the following terms, specifications, stipulations, and conditions, to wit:

"All of said lumber to be delivered f. o. b. cars at the expense of the party of the first part.

"It is further provided that all culls of box lumber shall be delivered to the party of the second part at five and 50/100 (5.50) dollars per thousand feet, and not included in the price for the lumber heretofore mentioned."

Omitting the provisions concerning the various lengths, widths, and thickness of the lumber, the contract proceeds:

"All lumber is to be cut, piled and covered under the supervision and direction of the party of the second part, and in such thickness, widths and lengths as may be desired from time to time by the party of the second part; but not to interfere with specific provisions herein.

"All lumber delivered under the terms of this contract is to be thoroughly and wholly dry and the measurements are to be taken of said lumber when the same is thoroughly dry; and all of said lumber is to be trimmed at both ends and to be free from wane, and to be properly and carefully manufactured in a workmanlike and skillful manner.

"All number three shop and box lumber delivered under the terms of this contract is to be scaled by a piece tally, and all number two shop lumber and better is to be scaled by stick tally and be graded under the Mississippi River Valley Grading Rules for white pine lumber as adopted by the California Sugar and White Pine Agency of the state of California.

"Box lumber culls for the purposes of this contract are defined as follows: All boards containing wind-shake, rot, solid pitch, black stain, and other defects which unfit said boards to cut at least eighty-five (85) per cent. for box purposes, as understood under the rules governing California box cuttings.

"Clear and shop lumber which is stained, is to be graded as box lumber.

"The party of the second part agrees to pay for said lumber within ten (10) days after same shall have been delivered to it at Woodville Station on siding, county of Jackson, state of Oregon, subject to a two (2%) per cent. discount from the purchase price of said lumber as aforesaid.

"In the event that the party of the first part should fail, neglect or refuse to comply with the terms and conditions of this contract, the nature, extent and character of the damage inflicted by such failure, neglect or refusal being such that it is impossible to determine in money the exact extent thereof, the parties hereto hereby liquidate and determine the damage for a breach hereof at the sum of two thousand five hundred (2,500) dollars.

"The terms and conditions of this contract, and the contract itself, are to be interpreted, defined and declared according to the laws of the state of California.

"The party of the first part is to deliver all of said lumber as fast as possible after the said lumber is dry and in proper condition for delivery, and when same shall weigh 2,800 lbs. or less per thousand feet, but at least fifty per cent. of the lumber cut by the party of the first part and in pile at its yards near sawmill must be delivered within ninety days after same has been cut."

The complaint filed in the action by the defendant in error to recover damages for the alleged breach of the contract by Kesterson and Silsby set up the contract, and alleged, among other things, that the lumber covered by it was to be shipped immediately on delivery, as agreed, from said Woodville Station, in the state of Oregon, to San Francisco, and other points in the state of California, and that the portion delivered was actually so shipped and transported; that on the 23d day of February, 1907, the said Griffin & Skelley Company assigned to the plaintiff the said contract, and all its rights thereunder, and all causes of action growing out of its breach by the defendants or either of them, and all of its claims for damages sus-

tained thereunder; that the defendants on the 22d day of September, 1906, notified the Griffin & Skelley Company that they would not deliver any more lumber under the contract, and thenceforward refused to do so; that the entire cut of lumber of the defendants for the season of 1906 amounted to 4,348,853 feet of lumber.

The complaint then sets up the provisions of sections 1670, 1671, 3308, and 3354 of the Civil Code of the state of California, and alleges "that the law of California expressly provides how the actual damage may be sustained in the breach of a contract such as set forth herein, and that it is not impracticable or extremely difficult to fix the actual damage for the breach of this contract."

The complaint then alleges that the defendants delivered to the Griffin & Skelley Company only 814,833 feet of lumber, the agreed price for which was paid them by that company in accordance with the terms of the contract; that subsequent to the execution of the contract the parties thereto agreed to modify the same, so that the minimum amount to be delivered under the contract should be 4,000,000 feet.

The complaint further alleges that almost immediately after the alleged repudiation of the contract the defendants proceeded to sell lumber embraced in the contract and which had not been delivered to the Griffin & Skelley Company, nor to its assignee, the plaintiff in the action, to other parties, at the rate of $14.50 a thousand feet, which sum the complaint alleges was the market value of such lumber during the months of September and October, 1906, in the market nearest to its place of delivery under the contract sued on; that the average price per thousand feet of the lumber contracted for, according to the terms of said contract, was $9.75 per thousand feet, and that the said Griffin & Skelley Company was damaged by the defendants' breach of the contract in the sum of $16,625, for which, with costs, the plaintiff asked judgment.

Among other defenses the plaintiffs in error set up in the amended answer to the complaint that the Griffin & Skelley Company never complied with any of the provisions of the statutes of Oregon prescribing the conditions under which foreign corporations may transact business in that state; that that company entered the state of Oregon in the summer of 1905, and engaged in the business of buying and selling lumber, and continued in such business in the counties of Jackson, Josephine, and Douglas of that state "without any authority or license from the state of Oregon so to do, and without complying with any of the laws of the state of Oregon requiring the payment of entrance fee and license fee by foreign corporations, or the appointment of attorney in fact by foreign corporations doing business in the state of Oregon," and that the plaintiff, at the time of the assignment to it by the Griffin & Skelley Company, and until some day not named in the year 1907, also failed to comply with those provisions of the statutes of the state of Oregon.

For further answer and defense the defendants allege that after the making of the contract sued on, and on or about July 10, 1906, the defendants began the delivery of lumber at Woodville, Or., "and continued to deliver lumber at said place for the said Griffin & Skelley Company and up till September 1, 1906, and the defendants demanded payment for the same each 10 days according to the terms of said contract for the amount delivered according to the terms of said contract; that the defendants delivered at Woodville, Or., prior to September 1, 1906, such amount of lumber that was under the price fixed in said contract of a greater value than $14,000, and Griffin & Skelley Company and plaintiff refused to pay for said lumber or any part thereof, except such amount as had been received at La Moine, Cal., the actual value of which was under the terms of said contract, and as graded by plaintiff, about $7,000, but which defendants allege was at the contract price worth $8,000; that on the 1st day of September, 1906, there was due from Griffin & Skelley Company to defendants for lumber so delivered at Woodville, Or., a balance of more than seven thousand ($7,000) dollars, and the Griffin & Skelley Company and plaintiff refused to pay said sum or any part thereof, and because of such failure and refusal the de-

fendants rescinded the said contract, and so notified the Griffin & Skelley Company and plaintiff."

For further answer and defense, the defendants alleged "that plaintiff in receiving and scaling the lumber delivered by the defendants at Woodville, Or., defrauded the defendants by grading said lumber at inferior grades to actual grades of the lumber under the terms of said contract, to its loss and damage of the sum of one thousand ($1,000) dollars; that because of the fraudulent acts of the Griffin & Skelley Company and plaintiff in grading said lumber to defendants' loss and damage, the defendants, in the month of September, 1906, rescinded the said contract and refused to deliver lumber thereunder; that, after the rescission of the contract as aforesaid, the defendants sold the lumber out that was to be delivered under said contract, but the amount cut was 4,000,000 feet board measures and no more, and the same was sold for the sum of $12.50 per thousand and no more, and was of no greater market value than $12.50 per thousand."

The reply put in issue, among other things, the averments of the amended answer to the effect that the Griffin & Skelley Company never complied with any of the provisions of the statute of the state of Oregon prescribing the conditions under which foreign corporations may transact business in that state, and its averments in respect to the fraudulent scaling of the lumber by the plaintiff and its assignor.

The trial resulted in a verdict for the plaintiff in the sum of $4,000, for which judgment, with costs, was entered against the defendants.

Robert G. Smith, for plaintiffs in error.

Wm. D. Fenton, Ben C. Dey, Kenneth L. Fenton, and James E. Fenton, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The original complaint contained no allegation of performance of the contract in question by the plaintiff, but on the trial the latter was permitted to amend the complaint by making that allegation. That action of the court constitutes one of the "three principal questions" stated by the plaintiffs in error to be involved on this writ of error. The granting of such an application rests in the sound discretion of the court, and, even should it be conceded that the failure of the plaintiff to make the allegation in the original complaint was not cured by the issue in respect to that matter which was made by the answer of the defendants and the plaintiff's reply thereto, the record in the case fails to show any abuse of such discretion.

[2] The point urged by counsel for the plaintiffs in error against the right of the plaintiff in the action to maintain it on the ground that the Griffin & Skelley Company never complied with the Oregon statute prescribing the conditions under which foreign corporations may transact business in that state is not open to our consideration. That pleaded defense was demurred to by the plaintiff, and the trial court sustained it in its ruling on the demurrer. Upon the conclusion of the evidence given on the trial the court instructed the jury upon that subject as follows:

"Another issue in the case is that the Griffin & Skelley Company was a foreign corporation, and that that corporation had not complied with the laws of the state of Oregon, and that, not having complied with the laws of the state of Oregon, it could not do business in this state; hence that, having entered into the contract which is set out here in the complaint in the state of Oregon, that contract is void. I instruct you as to that is-

sue that the contract was made with a view, upon the part of the defendants, and a knowledge of that fact, that this lumber was to be shipped from Woodville out of the state of Oregon, into the state of California, or elsewhere, beyond the confines of the state of Oregon. This makes of the contract an interstate transaction; that is to say, that the parties were dealing in interstate commerce. The lumber which was the subject of the contract was to be shipped from one state into another, and that fact made it interstate commerce. The parties dealing with interstate commerce had a right to make the contract notwithstanding Griffin & Skelley Company may not have complied with the laws of the state of Oregon. Hence I instruct you that that issue is out of the case, and you need not consider it further."

To the instruction so given no exception was reserved or taken by the defendants, nor did they request any instruction upon that point. We are therefore precluded from considering whether the contract in suit was so concerned with interstate commerce as to free it from the operation of the Oregon statute.

[3] But one other point urged by the plaintiffs in error remains to be considered, namely, the construction of the contract by the court, instead of leaving that question to the determination of the jury under appropriate instructions. The view taken by the trial judge was that by the express terms of the contract, rightly construed, all of the lumber embraced by it was to be delivered by the sellers free on board the cars at the railroad siding at Woodville Station, and that the payments thereby required to be made by the purchaser became due ten days after such time. The instructions upon the subject were to that effect, and we are of the opinion that they were correct.

Finding no error in the record calling **for a reversal**, the judgment is affirmed.