MATERIALS RESEARCH CORPORATION, PLAINTIFF-AP-
PELLANT, v. METRON, INC., A CORPORATION OF THE
STATE OF NEW JERSEY AND CHRISTOPHER F. MALO,
JR., DEFENDANTS-RESPONDENTS.

Argued September 12, 1973—Decided December 4, 1973.

*Mr. Norman Biener* argued the cause for appellant.

*Mr. Sheppard A. Guryan* argued the cause for respondents (*Messrs. Lasser, Lasser, Sarokin and Hochman,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.   The narrow issue posed by this appeal is whether the application of the foreign corporation qualification provision of New Jersey's statutes to plaintiff's activities unconstitutionally burdens interstate commerce.  If so, the court below was in error in dismissing the complaint "on the ground that plaintiff has not obtained a certificate of authority to transact business in this State." That dismissal was on defendants' motion supported by affidavit, in response to which plaintiff filed an affidavit, and it was on this sketchy material that the trial court reached its decision.  The Appellate Division, in an unreported opinion, affirmed the dismissal, agreeing with the trial court's finding that the corporate plaintiff was transacting business of an intrastate character in New Jersey "in a degree sufficient to invoke the injunction of *N. J. S. A.* 14A:13–11 denying such corporation access to our courts." We granted plaintiff's petition for certification, 63 *N. J.* 329 (1973).  Our review of the meager record leads us to an opposite conclusion from that reached below.

Plaintiff, Materials Research Corporation (hereinafter MRC), is a corporation of the State of New York, with its principal office in Orangeburg, New York. It brings this business tort action against Metron, Inc., a New Jersey corporation, and Christopher F. Malo, Jr., an officer, director and founder of Metron and formerly an officer of MRC. Malo resides in New Jersey. It is alleged that defendants have maliciously interfered with the contractual and advantageous relations of plaintiff with its key personnel, inducing them to breach their employment contracts with the plaintiff by resigning and entering the employ of defendant Metron. It is further alleged that "plaintiff has suffered * * * loss of business and profits, diminished sales, low morale among the remaining key personnel, loss of standing and status in its field with its customers and will be put to great expense to recruit and train replacement personnel." The complaint seeks an injunction, an accounting, com-

pensatory and punitive damages, and a declaration that certain employment contracts are void.

While the answer does not set up any separate defense with respect to the plaintiff's capacity to maintain any action in this State, the dismissal motion previously referred to was timely brought, with affidavits being filed on behalf of all parties. After oral argument the trial court concluded, as indicated above, that plaintiff is transacting business in this State and that to maintain the suit it should first obtain the appropriate certificate within sixty days.[1] Plaintiff not having availed itself of the opportunity so afforded, an Order of Dismissal was filed after the sixtieth day.

Plaintiff manufactures and sells scientific equipment, instruments, and ceramics, and it processes metals. It has offices throughout the world. Its products are sold directly to customers throughout this country, including New Jersey. It does not maintain any New Jersey office. The record contains an annual report and financial statement for fiscal 1970, indicating that sales for the year preceding the commencement of the instant action amounted to approximately $5,700,000. According to defendants MRC's New Jersey orders approximated $250,000., or about 4.4% of the total sales.

We have only an incomplete picture of MRC's marketing system, from which it appears that there are eight "sales districts" manned by "sales engineers" who solicit orders on MRC's behalf. They do not "write" or accept orders, but orders obtained by them are subject to approval of the regional sales manager or a corporation officer of the plaintiff at its New York office.

While plaintiff's affidavits in response to the moving papers indicate that it has about thirty New Jersey customers and

[1]Compliance with a qualification requirement during the course of trial has been held sufficient for a plaintiff unqualified at the action's inception to avoid being precluded from maintaining suit. *Menley & James Laboratories, Ltd. v. Vornado, Inc.*, 90 *N. J. Super.* 404 (Ch. Div. 1966).

about thirty to thirty-five "prospective" customers[2] in this State, defendant Metron asserts that in 1970 MRC sold its products to about one hundred New Jersey customers. The trial judge did not make any finding of fact on this point, presumably being of the view that this unresolved discrepancy did not affect his conclusion.

The title of sales engineer appears to be a somewhat pretentious one. We take it that the function of persons holding this title is simply to explain the plaintiff corporation's product lines to customers and potential customers. While Metron says that MRC's New Jersey sales engineer received orders and sells products, apparently the trial court did not take this as an allegation of activity beyond solicitation, in view of his finding that MRC orders originating in New Jersey were subject to acceptance by the home office.

The New Jersey sales engineer lives in New Jersey and his sales region includes this State. He is paid on a salary and commission basis and visits the home office once a week to complete his paper work. MRC denies that the sales engineer uses his residence as an office on the corporation's behalf and says it does not reimburse him for the use of his home. Orders are telephoned to the New York office and most of them are received on customer order forms. Invoicing and receipt of payment takes place in New York. Goods are shipped f. o. b Orangeburg, New York. MRC maintains a listing in the white pages of the Bergen County telephone directory, with the address listed as Orangeburg, New York; the telephone is a tie line to the New York office maintained, says MRC, as a device for the convenience of its customers so that they can avoid toll charges.

*N. J. S. A.* 14A:13-11(1) provides in part that "No foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have

---

[2] A "prospective" or "potential" customer is described in the record as one who has received a price quotation within the past two years.

obtained a certificate of authority." The penalty is for-
feiture to the State of "not less than $200.00 nor more than
$1,000.00 for each calendar year, not more than 5 years prior
thereto, in which it shall have transacted business in this
State without a certificate of authority." *N. J. S. A.* 14A:13–
11 (3).

Plaintiff's position is that this statutory scheme for
the licensure of foreign corporations cannot be constitution-
ally applied to it in the factual complex before us because
its activities are in interstate commerce and it is not trans-
acting business in this State. Among the recognized constitu-
tional limitations on the states' ability to regulate foreign
corporations through qualification statutes are those arising
from the Commerce Clause of the United States Constitution,
art. 1, § 8, c. 3. Thus, the law has long been settled that a
state may not impose a qualification statute which unduly
burdens interstate commerce, *Dahnke-Walker Milling Co. v.
Bondurant,* 257 *U. S.* 282, 42 S. Ct. 106, 66 *L. Ed.* 239
(1921); see, e. g., *International Text-Book Co. v. Pigg,* 217
*U. S.* 91, 30 S. Ct. 481, 54 *L. Ed.* 678 (1910); *Sioux Remedy
Co. v. Cope,* 235 *U. S.* 197, 35 S. Ct. 57, 59 *L. Ed.* 193
(1914).

Defendants, while not quarreling with this statement
of the basic legal principle involved, dispute its application
to this case, arguing that a review of the authorities "de-
mands the conclusion that plaintiff is transacting business in
this State and must comply with *N. J. S. A.* 14A:13–11."
They readily concede, however, that "doing business" is a
term not susceptible of precise definition automatically re-
solving every case, and that each case must be dealt with on
its own circumstances to determine if the foreign corpora-
tion has engaged in local activity or only in interstate com-
merce.[3]

---

[3]For a general discussion see 36 *Am. Jur.* 2d, Foreign Corporations
§ 316 *et seq.,* and 17 *Fletcher, Cyclopedia of Corporations* § 8464
(1960).

Both sides rely on *Eli Lilly & Co. v. Sav-On Drugs, Inc.,* 57 *N. J. Super.* 291 (Ch. Div. 1959), aff'd 31 *N. J.* 591 (1960), aff'd 366 *U. S.* 276, 81 S. Ct. 1316, 6 *L. Ed.* 2d 288 (1961). There the plaintiff, an Indiana corporation engaged in the manufacture and sale of pharmaceutical products, had its main office and plant in Indiana. It sold its goods to wholesalers nationwide, including New Jersey. Lilly brought suit in New Jersey to enjoin defendant, Sav-On, from selling Lilly's products in New Jersey at prices lower than those fixed in minimum retail price contracts into which Lilly had entered with a number of New Jersey drug retailers. Sav-On had not signed such a contract, but the Fair Trade Act bound it to agreements signed by others. Sav-On moved to dismiss the complaint under the then applicable statute which denied a foreign corporation transacting business in this State the right to bring any action in New Jersey upon any contract made here unless and until it qualified to do business here. The argument was that Lilly had transacted business here even though it was not qualified to do so and had thereby incurred the statutory disability. The trial court granted the motion to dismiss, and this Court affirmed, relying entirely on the opinion below.

The United States Supreme Court affirmed the judgment for defendant, holding that Lilly was indeed engaged in intrastate as well as interstate aspects of the New Jersey drug business. The opinion focused on the function of Lilly's "detailmen" as the basis for imputing intrastate activities to Lilly, emphasizing the following: maintenance of an office in Newark with its name on the door and on the tenant registry in the lobby of the building; rental by an employee of that space, which was paid for by Lilly; telephone listings in the regular and classified sections of the directory, giving the Newark address; presence of a secretary in the Newark office, paid directly by Lilly on a salary basis; a work force of eighteen "detailmen" paid by Lilly on a salary basis with no commissions, their function being to visit retail pharm-

acies, physicians and hospitals in order to acquaint them with Lilly's products. The "detailmen" did not sell to New Jersey retailers but urged them to buy from Lilly's New Jersey customers, who were wholesalers.

By comparison we note that MRC has no New Jersey office. Its telephone listing is in the regular section only of the New Jersey directory, giving a New York address, and the number ties into a New York line. MRC's sales engineer is compensated on a salary and commission basis and deals only with MRC customers.

The parties also cite *United States Time Corp. v. Grand Union,* 64 *N. J. Super.* 39 (Ch. Div. 1960), wherein a corporation of the State of Connecticut sued to enforce price agreements under the Fair Trade Act. Defendant contended that plaintiff was a foreign corporation not authorized to do business in New Jersey and thus was barred from maintaining the action by virtue of R. S. 14:15–4. Plaintiff was engaged in the manufacture and distribution of watches which were sold throughout New Jersey and elsewhere in the United States. It employed two salesmen, neither of whom resided in New Jersey; one called on twenty-eight accounts and the other had two customers. The salesmen worked under the direct supervision of the sales office in New York City, and the orders taken by them were subject to acceptance at plaintiff's home office in Connecticut. Twenty-seven of the accounts referred to were wholesale distributors. The New Jersey sales accounted for about 2% of the total volume of business conducted by plaintiff in the United States. No taxes were due or paid to the State of New Jersey. Plaintiff had no office or telephone listings in the State; it neither held nor leased real property, and it did not occupy any premises in New Jersey. Confronted with this record the Chancery Division distinguished *Lilly, supra,* and concluded there was "no evidence that plaintiff is or has been transacting business in the State of New Jersey."

█ In an effort to distinguish this case from the one at hand the trial court relied on the fact that U. S. Time's salesmen did not live in New Jersey, the corporation had no telephone number, and "there wasn't the substantial amount of business done in New Jeresy that was done and is being done by this plaintiff." These distinctions hardly seem significant, except possibly for the amount of business conducted in New Jersey, and even the magnitude of that difference in this case is not impressive, being 2% of the total volume in *United States Time,* and 4.4% in the instant case (we note that in *Lilly* it was 2.7% of the total domestic sales). We view the circumstances of MRC's sales engineer living within New Jersey rather than elsewhere and his employer's maintaining a telephone number in this State with a tie line to the New York office as being conditions under which he conducted his business rather than determinatives of the essential nature of that business.[4]

██ On the sparse record before us we conclude that this case is akin to the line of so-called "drummer" decisions. The leading case is *Robbins v. Shelby County Taxing Dist.,* 120 *U. S.* 489, 7 S. Ct. 592, 30 *L. Ed.* 694 (1887), wherein plaintiff, a citizen of Ohio, failed to take out a license in Tennessee. He was engaged in the business of "drumming," i. e. soliciting trade by the use of samples for the firm for which he worked. The Court held that the bare solicitation of orders did not constitute the transacting of business for qualification purposes. See *Corson v. Maryland,* 120 *U. S.* 502, 7 S. Ct. 655, 30 *L. Ed.* 699 (1887); *Asher v. Texas,*

---

[4] In *Federal Schools Inc. v. Sidden,* 14 *N. J. Misc.* 892 (Sup. Ct. 1936) suit was brought for the agreed price of the course of instruction furnished to a New Jersey resident by a Minnesota correspondence school, which had the following contacts with New Jersey: a "resident instructor," a "resident scholar" in New Jersey, and a New Jersey office. Held, plaintiff was engaged in interstate commerce and suit could be maintained. See also *International Textbook Co. v. Pigg, supra.*

128 *U. S.* 129, 9 S. Ct. 1, 32 *L. Ed.* 368 (1888); *Stouten-burgh v. Hennick,* 129 *U. S.* 141, 9 S. Ct. 256, 32 *L. Ed.* 637 (1889); *Stockard v. Morgan,* 185 *U. S.* 27, 22 S. Ct. 576, 46 *L. Ed.* 785 (1902); *Rearick v. Pennsylvania,* 203 *U. S.* 507, 27 S. Ct. 159, 51 *L. Ed.* 295 (1906); *Dozier v. Alabama,* 218 *U. S.* 124, 30 S. Ct. 649, 54 *L. Ed.* 965 (1910); *Stewart v. Michigan,* 232 *U. S.* 665, 34 S. Ct. 476, 58 *L. Ed.* 786 (1914); *Davis v. Virginia,* 236 *U. S.* 697, 35 S. Ct. 479, 59 *L. Ed.* 795 (1915); *Real Silk Hosiery Mills v. Portland,* 268 *U. S.* 325, 45 S. Ct. 525, 69 *L. Ed.* 982 (1925); *Best & Co. v. Maxwell,* 311 *U. S.* 454, 61 S. Ct. 334, 85 *L. Ed.* 275 (1940); *Nippert v. City of Richmond,* 327 *U. S.* 416, 66 S. Ct. 586, 90 *L. Ed.* 760 (1945).

To be sure, solicitation with some additional elements may take a case across the threshold of intrastate commerce. Without attempting to catalogue all those "additional elements," we suggest weight might be given to such factors as a salesman's having binding authority or approving contracts himself rather than forwarding them to a sales office or home office for approval,[5] and the foregoing discussion of the distinguishing features of *Lilly* illustrates the kind of evidentiary material which has led this Court to find intrastate activity, not present here.

Defendant seeks to support the decision below on the authority of *Bozzuto's Inc. v. Frank Kantrowitz & Sons, Inc.,* 117 *N. J. Super.* 146 (App. Div. 1971). The case is inapposite, for there the court did not undertake to apply any label of "interstate" or "intrastate" commerce to corporate

---

[5] In *State v. Mauer,* 75 *N. J. Super.* 90 (Cty. Ct. 1962), an employee of a California corporation engaged in the sale of photograph albums solicited orders in New Jersey to be accepted and filled from out of the State; he also exhibited a sample album but made no sale of it. The court held that the employee was engaged in interstate commerce, on the authority of *Nippert v. Richmond, supra; Moyant v. Paramus,* 30 *N. J.* 528 (1959); *State v. Kromer,* 34 *N. J. Super.* 465 (Cty. Ct. 1955). See also *Clifton v. Weber,* 84 *N. J. Super.* 333 (App. Div. 1964), aff'd 44 *N. J.* 266 (1965).

activities. The sole issue presented was "whether a foreign corporation, not qualified to do business in New Jersey pursuant to statutory mandate, may seek affirmative relief in an action at law in conjunction with its defense against the claim of another," 117 *N. J. Super.* at 147.

Defendants also rely on a line of cases dealing with the exercise of jurisdiction over foreign corporations. These are likewise inapplicable, inasmuch as the qualification requirement demands greater connection with the state than the requirements for a finding of jurisdiction for service of process purposes. See generally Note, "Foreign Corporations: The Interrelationship Between Jurisdiction and Qualification," 33 *Ind L. J.* 358, 369 (1958).

There being, on the limited record before us, an insufficient showing of intrastate commerce to bar plaintiff from maintaining the present action, the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*For reversal and remandment*—Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD—5.

*For affirmance*—None.