536 A.2d 633

**YANGMING MARINE TRANSPORT CORPORATION**

v.

**REVON PRODUCTS U.S.A., INC.**

**No. 21, Sept. Term, 1986.**

Court of Appeals of Maryland.

Feb. 5, 1988.

Charles J. Broida (Scher & Broida, P.A., on brief), Columbia, for appellant.

Stephen F. White (David W. Skeen and Wright, Parks, Constable & Skeen, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH* and McAULIFFE, JJ.

ELDRIDGE, Judge.

Maryland Code (1975, 1985 Repl.Vol.), § 7–202(a) of the Corporations and Associations Article states that, before doing any interstate or foreign business in Maryland, a foreign corporation shall "register" with the State Department of Assessments and Taxation (the Department).[1] Section 7–203(a) of the Corporations and Associations Article provides that, before doing any intrastate business in Maryland, a foreign corporation shall "qualify" with the Department.[2] Finally, under § 7–301 of the same Article, if a foreign corporation is doing or has done "any intrastate,

---

* Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. Section 7–202 provides that, to register, a foreign corporation must certify to the Department the corporation's address and the name and address of its registered agent in Maryland. This section further provides that a foreign corporation need not register if it is qualified to do business under § 7–203.

2. To qualify, a foreign corporation must certify to the Department the corporation's address and the name and address of its registered agent in Maryland, § 7–203(b)(1). In addition, the foreign corporation must file with the Department a certificate stating that the corporation is in good standing under the laws of the place where it is organized, § 7–203(b)(2)(i). This certificate must have been executed by the official of the foreign jurisdiction with custody of the pertinent records. § 7–203(b)(2)(ii).

interstate, or foreign business" in Maryland without registering or qualifying, then neither the corporation nor any person claiming under it may maintain a suit in any court of this State.[3]

The principal question raised in this case is whether Yangming Marine Transport Corporation (Yangming) is doing business in Maryland within the meaning of § 7–301, and is thereby barred from maintaining this action because of its failure to register or to qualify. A second question, to be reached only if the first question is answered in the affirmative, is whether such prohibition, as applied under the circumstances of this case, is inconsistent with the Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3.

## I.

Yangming exists under the laws of the Republic of China and is headquartered in Taipei, Taiwan. The parties have stipulated that, at all times relevant to this case, Yangming was "engaged in the transportation of goods by sea for hire in foreign commerce." Yangming is represented in the United States through its agent in New York, Solar International Shipping Agency, Inc.

Yangming operated a weekly container shipping service between several ports on the East Coast of the United

---

3. Section 7–301 is as follows:
   "Failure to register or qualify—Maintenance of suit.
     If a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State unless it shows to the satisfaction of the court that:
     (1) The foreign corporation or the person claiming under it has paid the penalty specified in § 7–302 of this subtitle; and
     (2) Either:
     (i) The foreign corporation or a foreign corporation successor to it has complied with the requirements of Subtitle 2 of this title; or
     (ii) The foreign corporation and any foreign corporation successor to it are no longer doing intrastate, interstate, or foreign business in this State."

States, including Baltimore, and various ports in the Far East, including ports in Korea. Yangming's agent in Baltimore was Maher Shipping, Inc. Maher's duties included husbanding cargo for Yangming's vessels and arranging port services, facilities, and supplies for Yangming's vessels while in the Port of Baltimore.

Yangming advertised its weekly container shipping service from Baltimore in several publications that circulated among Baltimore freight forwarders, steamship agents, ocean carriers, and others engaged in foreign commerce by sea. The advertisements contained Maher's address and telephone number, and disclosed Maher's agency relationship with Yangming.

During port visits to Baltimore, Yangming's ships expended sums of money for Maryland Bay Pilots, tugs and berthing, loading and unloading, and refueling and reprovisioning. Additionally, Yangming shipped cargo from other states as well as Maryland inside containers that traveled by train or truck between the various shippers' premises and the Port of Baltimore. At all times relevant to this case, Yangming had no resident agent in Maryland and had neither registered nor qualified to do business in Maryland.

Yangming's suit against the defendant Revon Products, U.S.A. (Revon), arose out of a dispute over freight charges. In early 1982, a Korean seller agreed to ship certain goods freight prepaid to Revon in Baltimore. The goods were to travel on one of Yangming's vessels. Because of an unrelated dispute between Yangming and the seller Yangming refused to deliver the original bill of lading. Consequently, Revon could not obtain title to the goods. When the goods arrived in Baltimore in the Spring of 1982, Maher informed Revon that the seller had not paid the freight charges and that Revon would not receive the goods until it discharged this $6,000 obligation. After Revon issued a check and obtained the goods, the seller claimed that it had indeed prepaid the freight and asserted that Revon could not deduct the $6,000 from the contract price. As a result, Revon stopped payment on the check.

In March 1985, Yangming filed a complaint in the Circuit Court for Howard County to recover the $6,000 from Revon. In a motion to dismiss, Revon asserted, *inter alia,* that the trial court lacked "personal jurisdiction" over Yangming. In its supporting memorandum, Revon explained that Yangming was "doing business" in Maryland without registering or qualifying with the State Department of Assessments and Taxation, in contravention of §§ 7–202 and 7–203. Hence, Revon concluded that, under § 7–301, Yangming could not maintain this action.

In December 1985, the trial court granted Revon's motion to dismiss. Relying on federal diversity cases, the trial judge concluded that, because Yangming's activities in the Port of Baltimore amounted to "doing business" in Maryland, Yangming was required to register under § 7–202 or to qualify under § 7–203. As Yangming had taken neither step, the trial judge held that § 7–301 barred Yangming from bringing an action in any court of Maryland. The trial judge also rejected Yangming's claim that the application of § 7–301 would place an unconstitutional burden on interstate and foreign commerce. In reaching this decision, the trial judge relied on *Eli Lilly & Co. v. Sav–On–Drugs,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), in which the Supreme Court had held that, consistent with the Commerce Clause, a state may apply a "closed-door" statute such as § 7–301 to a foreign corporation engaged in both intrastate and interstate business. Equating Yangming's activities with "intrastate" business, the trial judge concluded that Yangming could constitutionally be barred from suing in Maryland courts.

Yangming appealed to the Court of Special Appeals. Before consideration in that court, we issued a writ of certiorari.

### II.

As pointed out above, under § 7–301, a foreign corporation that has not complied with § 7–202 or § 7–203 is barred from suing in Maryland if the corporation "is doing

... any intrastate, intérstate, or foreign business in this State." This Court, however, has not given § 7–301 an entirely literal construction. Specifically, this Court has not construed § 7–301 as listing three, disjunctive factors, any one of which, if present, could bar an unregistered or unqualified corporation from suing in Maryland courts. Instead, we have held that § 7–301 embodies a test for determining whether a foreign corporation is "doing business" in Maryland. *See G.E.M., Inc. v. Plough, Inc.*, 228 Md. 484, 486, 180 A.2d 478, 480 (1962). Under this test, § 7–301 bars an unqualified or unregistered foreign corporation from suing in Maryland courts only if the corporation is doing such a substantial amount of localized business in this State that the corporation could be deemed "present" here. *See, e.g., S.A.S. Personnel Consult. v. Pat–Pan*, 286 Md. 335, 339–340, 407 A.2d 1139, 1142 (1979); *G.E.M., Inç. v. Plough Inc., supra*, 228 Md. at 488–489, 180 A.2d at 480–481.

■ Earlier, this test was considered analogous to the statutory "doing business" test, used before the enactment of the present Long Arm Statute,[4] to determine whether a foreign corporation was amenable to service of process in the State. *See* Code (1957), Art. 23, § 92(b); *G.E.M., Inc. v. Plough Inc., supra*, 228 Md. at 486, 180 A.2d at 480. *See also* 22 Op.Att'y Gen. 262, 264 (1937). The "doing business" test under § 7–301, however, can no longer be considered analogous to the test for determining whether Maryland may assert personal jurisdiction over a foreign corporation. Chapter 532 of the Acts of 1967 repealed the statutory "doing business" test for service of process. Moreover, under Code (1974, 1984 Repl.Vol.), § 6–103(b)(1) of the Courts and Judicial Proceedings Article (the Long Arm Statute), Maryland may now assert personal jurisdiction over a foreign corporation that "transacts any business" in the State. This Court has repeatedly stated that

---

**4.** Code (1974, 1984 Repl. Vol.), § 6–103 of the Courts and Judicial Proceedings Article.

§ 6–103 represents a legislative effort to expand the boundaries of in personam jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment. *Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874 (1986), remanded on other grounds, —— U.S. ——, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987); *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818 (1976); *Krashes v. White*, 275 Md. 549, 558–559, 341 A.2d 798 (1975); *Lamprecht v. Piper Aircraft Corp.*, 262 Md. 126, 130, 277 A.2d 272 (1971); *Harris v. Arlen Properties*, 256 Md. 185, 195–196, 260 A.2d 22 (1969); *Vitro Electronics v. Milgray*, 255 Md. 498, 504–505, 258 A.2d 749 (1969); *Gilliam v. Moog Industries*, 239 Md. 107, 111, 210 A.2d 390 (1965). Therefore, the "transacting business" test under § 6–103(b)(1) requires far fewer contacts with the State than did the "doing business" test. Auerbach, *The "Long Arm" Comes to Maryland*, 26 Md.L.Rev. 13, 33 (1966); *Snyder v. Hampton Industries, Inc.*, 521 F.Supp. 130, 137 (D.Md.1981), *aff'd*, 758 F.2d 649 (4th Cir.1985). *See S.A.S. Personnel Consult v. Pat–Pan, supra*, 286 Md. at 338 n. 1, 407 A.2d at 1141 n. 1. Consequently, under § 7–301, a foreign corporation is "doing business" in Maryland only if the corporation conducts a significantly greater amount of local activity in Maryland than would be necessary for Maryland to assert personal jurisdiction over the corporation.[5]

---

**5.** A number of states, interpreting their own statutes, have reached a similar conclusion. *See Johnson v. MPL Leasing Corp.*, 441 So.2d 904, 906 (Ala.1983); *Kachemak Seafoods, Inc. v. Century Airlines*, 641 P.2d 213, 216 (Alaska 1982); *Goodwin Bros. Leasing Inc. v. Nousis*, 373 Mass. 169, 366 N.E.2d 38, 42–43 (1977); *Materials Research Corporation v. Metron, Inc.*, 64 N.J. 74, 312 A.2d 147, 152 (1973); *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895, 897 (1976); *Carolina Components v. Brown Wholesale Co.*, 272 S.C. 220, 250 S.E.2d 332, 333 (1978); *Dunham–Bush, Inc. v. Bill Hartmann Plumb. & H. Inc.*, 30 Utah 2d 177, 515 P.2d 92, 93–94 (1973); *Lawyers Cooperative Publishing Co. v. Kuntz*, 73 Wash.2d 674, 440 P.2d 813, 814 (1968). *But see Snelling & Snelling, Inc. v. Watson*, 41 N.C.App. 193, 254 S.E.2d 785, 788 (1979).

As previously mentioned, under our cases an unqualified or unregistered foreign corporation is barred from suing in Maryland courts only if the corporation is engaged in a substantial amount of localized business activity in Maryland. In *G.E.M., Inc. v. Plough Inc., supra,* the plaintiff, a foreign manufacturer, had neither qualified nor registered. The plaintiff had no address, property, warehouses, offices, or telephone listing in Maryland; its products entered Maryland by common carrier through interstate commerce; its salesmen operated in Maryland, but had no authority beyond solicitation; its only activities beyond solicitation involved monitoring compliance with Fair Trade agreements, the occasional distribution of promotional materials, and the allowance of discounts for participation in advertising programs. 228 Md. at 486–488, 180 A.2d at 480–481. On these facts, the Court held that the plaintiff was not "doing business" in Maryland. 228 Md. at 488, 180 A.2d at 481. The Court commented that mere solicitation does not constitute "doing business." As to the conduct beyond solicitation, the Court stated: "[A]ctivities merely incidental to, and directly connected with, the solicitation of interstate sales ... do not meet the test implicit in the statutory language in question." *Ibid.*

The plaintiff in *G.E.M., Inc. v. Plough, Inc.* had contended that "to apply the bar to a corporation doing wholly interstate business would violate the Commerce Clause." 228 Md. at 489, 180 A.2d at 481. By holding § 7–301 inapplicable in *G.E.M.,* the Court avoided this contention. Nonetheless, by construing the "doing business" test so as not to encompass the plaintiff's conduct, the Court indicated that a foreign corporation doing wholly interstate business is not "doing business" in Maryland, at least unless a significant proportion of the corporation's activities occur in this State.

More recently, in *S.A.S. Personnel Consult. v. Pat–Pan, supra,* we held that § 7–301 did not bar a suit brought by a nonresident personnel agency that solicited business in Maryland and referred one employee to a Maryland employer.

In reaching this decision, the Court echoed the concern, expressed in *G.E.M., Inc. v. Plough, Inc.*, that § 7–301 should not be construed to bar a suit brought by a foreign corporation not engaging in a significant amount of business in Maryland (286 Md. at 339, 407 A.2d at 1142): "Foreign corporations which merely solicit orders or sales, or engage in activities in Maryland directly related to such solicitation or sales, including the interstate delivery of goods, have ... been held not to be 'doing business.' "[6]

In sum, we have interpreted § 7–301 as allowing a foreign corporation, not engaged in significant business activity in Maryland, to maintain an action in the courts of this State despite a failure to register or qualify. We see no reason to construe § 7–301 differently in the case of a corporation that is engaged wholly in foreign commerce. Consequently, we hold that, under § 7–301, an unregistered or unqualified foreign corporation that engages in either interstate or foreign business activity in Maryland is barred from suing in the courts of this State only if the corporation also engages in localized business activity in Maryland such that it is "doing business" here.[7]

---

6. In *Gibraltar Constr. v. St. Nat'l Bank*, 265 Md. 530, 290 A.2d 789 (1972), however, this Court did hold that the "closed-door" statute barred a foreign corporation from bringing suit in Maryland. The plaintiff, Gibraltar, had previously qualified to do intrastate business in Maryland, but had allowed its qualification to lapse. The Court held that, absent evidence to the contrary, it would presume that Gibraltar was still doing business in Maryland. 265 Md. at 535, 290 A.2d at 792. Thus, the Court itself dismissed Gibraltar's appeal. *Id.* at 536, 290 A.2d at 793. *Compare J.I. Case Credit Corp. v. Insley*, 293 Md. 483, 494, 445 A.2d 689, 695 (1982) (distinguishing *Gibraltar* on the grounds that the record in *J.I. Case* contained evidence concerning the plaintiff's actions after its qualification lapsed and the defendants had conceded that such actions did not constitute "doing business").

7. The phrase in § 7–301, "doing ... any intrastate, interstate, or foreign business," contains terms used in §§ 7–202 and 7–203. Under § 7–202, a foreign corporation must register before doing any "interstate or foreign business" in Maryland. Under § 7–203, a foreign corporation must qualify before doing any "intrastate business" in Maryland. Thus, it has been suggested that, by construing § 7–301 as embodying essentially a "doing business" test, the Court has negated

## III.

Yangming maintains that it is engaged in transportation in international and foreign commerce, only. According to Yangming, its use of containers does not alter this conclusion, as containers are recognized as instrumentalities of foreign commerce. Additionally, Yangming contends that its activities in the Port of Baltimore, including those performed by Maher (husbanding cargo, arranging port facilities, services, supplies, etc.), and the use of tugs and pilots, are "essential and necessary to ... foreign commerce" and thus do not constitute "doing business." (Brief, p. 8).

Revon, on the other hand, concedes that Yangming is engaged in foreign commerce. Revon maintains, however, that the trial court was correct in concluding that Yangming's activities in the Port of Baltimore constituted "doing business."

In *S.A.S. Personnel Consult. v. Pat–Pan, supra,* 286 Md. at 339, 407 A.2d 1139, we explained the "doing business" test for purposes of § 7–301 as follows:

"A determination whether a particular act or set of acts constitutes 'doing business' depends upon the facts of each individual case, and rests not on a single factor, but

---

the distinction drawn in §§ 7–202 and 7–203 between "doing any interstate or foreign business" and "doing any intrastate business." *See Turner v. Smalis, Inc.,* 622 F.Supp. 248, 249 (D.Md.1985). This may not be entirely correct. Obviously, because § 7–203 refers only to "intrastate business," a foreign corporation need not qualify if it is doing only interstate or foreign business. On the other hand, § 7–202 plainly refers to "interstate or foreign business." Our decision in *G.E.M., Inc. v. Plough, Inc., supra,* however, suggests that § 7–202 does not require a foreign corporation to register if it is engaged wholly in interstate or foreign commerce *and* if there are no substantial activities localized in Maryland. Nonetheless, a foreign corporation, engaged in interstate commerce, but with significant activities localized in Maryland, might properly be required to register under § 7–202 and the Commerce Clause, depending upon circumstances. *See* the discussion in L. Tribe, *American Constitutional Law,* § 6–14 (2d ed. 1988). *Compare Allenberg Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *Eli Lilly & Co. v. Sav–On–Drugs,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961).

rather on the nature and extent of the business and activities which occur in the forum state. *White v. Caterpillar Tractor Co.*, 235 Md. 368, 372, 201 A.2d 856, 858 (1964); *State* ex rel. *Bickel v. Pennsylvania Steel Co.*, 123 Md. 212, 218, 91 A. 136, 138 (1914). Factors which may be taken into account include the payment of state taxes; the maintenance in the state of property, an office, telephone listings, employees, agents, inventory, research and development facilities, advertising, and bank accounts; the making of contracts; and the extent or pervasiveness of management functions including supervision and control of distributors and services for customers within the state. *Gilliam v. Moog Indus., Inc.*, 239 Md. 107, 109, 210 A.2d 390, 391 (1965); *White v. Caterpillar Tractor Co.*, 235 Md. at 373, 201 A.2d at 858; *Thomas v. Hudson Sales Corp.*, 204 Md. 450, 464–65, 105 A.2d 225, 231 (1954). Where there is solicitation, shipment of goods, and an extensive set of activities or management functions, foreign corporations have been held to be 'doing business.' *White v. Caterpillar Tractor Co.*, 235 Md. at 374, 201 A.2d at 859; *Thomas v. Hudson Sales Corp.*, 204 Md. at 465–66, 105 A.2d at 231."

In the present case, there is no dispute as to the nature or extent of Yangming's activities. Yangming has an agent and, in connection with its shipping activities, enters into contracts in Maryland. There is, however, no evidence that Yangming pays taxes, maintains property, inventory, or research and development facilities, or engages in management functions in Maryland. Yangming has no office, telephone listing, bank accounts, or employees in Maryland. Moreover, as shown by the record, Yangming's attempts to solicit business were by advertising in national publications. There was much less effort to solicit business in Maryland than that involved in *G.E.M., Inc. v. Plough, Inc., supra.*

Thus, on the whole, Yangming's activities resemble the conduct that was found not to constitute "doing business" in *G.E.M., Inc. v. Plough, Inc.* Admittedly, this case differs from *G.E.M.* in that the plaintiff in that case shipped

goods into Maryland by common carrier, while in this case, Yangming is the common carrier by which others ship their goods into Maryland. Nevertheless, we find this distinction insignificant given the insubstantiality of the local business engaged in by Yangming.

Moreover, Yangming's activities in the Port of Baltimore are integral and necessary parts of its wholly foreign shipping business, a business obviously within the ambit of the Commerce Clause. *See, e.g., Japan Line Ltd. v. County of Los Angeles,* 441 U.S. 434, 445–446, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) ("containers . . . are instrumentalities of foreign commerce, both as a matter of fact and as a matter of law); *Wash. Rev. Dept. v. Stevedoring Assn.,* 435 U.S. 734, 743–744, 98 S.Ct. 1388, 1395–96, 55 L.Ed.2d 682 (1978) (stevedores are instruments of interstate commerce); *Foster, et al. v. Davenport, et al.,* 63 U.S. (22 How.) 244, 246, 16 L.Ed. 248 (1859) ("towing was but the prolongation of the voyage of the vessels" engaged in interstate or foreign commerce). *See also Texas Transp. Co. v. New Orleans,* 264 U.S. 150, 44 S.Ct. 242, 68 L.Ed. 611 (1924).[8]

---

**8.** In the *Texas Transp. Co.* case, the Supreme Court, invalidating a license requirement imposed upon a corporation employed by the owners of vessels engaged exclusively in interstate or foreign commerce, described these activities as follows (264 U.S. at 151–152, 44 S.Ct. at 242):

"Defendant was regularly employed as agent for four steamship lines, under a contract fixing its compensation on the basis of commissions, calculated upon the gross amount of freight charges collected by it for each company. In addition, defendant occasionally represented other ship owners. All were exclusively engaged in interstate or foreign commerce, and defendant's business was confined solely to representing principals so engaged in such commerce. The service rendered consisted of soliciting and engaging cargo, nominating ships for carrying it, arranging for its delivery on the wharf, issuing bills of lading under the name of ship owner or charterer, arranging for stevedores for loading and discharging cargo, collecting freight charges, paying ships' disbursements, attending to immigration service and assisting generally in matters of local customs and regulations. Freight moneys collected, after deducting commissions, were remitted to the owners or charterers. As such agent, defendant was authorized to solicit cargo and quote

In sum, Yangming's activities in the Port of Baltimore were necessary and essential to its activities in foreign commerce; the shipowner's activities in Baltimore were not sufficiently distinct from its foreign commerce or sufficiently localized in Maryland to constitute "doing business" within the meaning of § 7–301.

Because of our holding that Yangming was not doing business in Maryland within the meaning of §§ 7–202, 7–203 and 7–301 as contrued by the Court, and thus Yangming did not have to qualify or register in order to maintain this suit, we do not directly reach the Commerce Clause issue raised by Yangming. Nevertheless, it must be acknowledged that the Court's construction and applications of the Maryland statutory scheme in this and prior cases obviously are influenced by constitutional considerations. Our construction and applications are in accord with the principle that a court will, whenever reasonably possible, construe and apply a statute to avoid casting serious doubt upon its constitutionality. *See, e.g., Heileman Brewing v. Stroh Brewery*, 308 Md. 746, 763–764, 521 A.2d 1225 (1987); *In re Criminal Investigation No. 1–162*, 307 Md. 674, 685, 516

---

freight rates and to issue receipts in the name of its principal for cargo delivered on the wharf.

"Upon these facts the trial court held that defendant's business was local in character and subject to the tax. Upon appeal, this judgment was affirmed by the State Supreme Court. 152 La. 497 [93 So. 751].

"The State Supreme Court thus stated the necessity and character of the agent's duties:

" 'The business of steamship agents is an extensive business in New Orleans, as it is in every large seaport. As a separate or an independent business, it is a result of the development of the country's commerce with foreign nations and among the several states. In the early days, when time was not so much the object or subject of economy as it is today, every ship's captain, for his own ship, discharged the duties and rendered the services for which local steamship agents are employed nowadays. But it would be impracticable now for a ship's captain to remain with his ship in port long enough to attend to the many matters which the local steamship agents can and do attend to for a ship at sea or in a foreign port. The business of steamship agents is therefore a necessary adjunct to commerce on the high seas.' "

A.2d 976, 982 (1986); *Davis v. State,* 294 Md. 370, 377, 451 A.2d 107, 111 (1982); *Pickett v. Prince George's County,* 291 Md. 648, 661, 436 A.2d 449, 456 (1981); *Prince Geo's Co. v. Chillum–Adelphi,* 275 Md. 374, 383, 340 A.2d 265 (1975).

The Supreme Court has consistently taken the position that a "closed-door" statute such as § 7–301 cannot, under the Commerce Clause, apply to unregistered or unqualified foreign corporations engaged in wholly interstate or foreign commerce. *Allenberg Cotton Company, Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *Eli Lilly & Co. v. Sav–On–Drugs, supra,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288; *Dahnke–Walker Milling Co. v. Bondurant,* 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921); *International Text–Book Co. v. Pigg,* 217 U.S. 91, 109–115, 30 S.Ct. 481, 485–487, 54 L.Ed. 678 (1910); *Sioux Remedy Co. v. Cope,* 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193 (1914); *Crutcher v. Kentucky,* 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649 (1891). *See Steinwender, Stoffregen & Co. v. Ritchey,* Daily Record, Sept. 14, 1940, at 2, col. 1 (Cir.Ct. of Balto. City Sept. 13, 1940) (invalidating Maryland's former registration and qualification scheme except as applied to intrastate commerce); *Thorneycraft v. Emery Air Freight Corp.,* 122 Ariz. 408, 409, 595 P.2d 200 (1979). In light of the Supreme Court's opinions, it is questionable whether, under the Commerce Clause, § 7–301 could validly be applied to bar this action by Yangming.[9]

---

**9.** We note that our application of § 7–301 in this case is consistent with numerous decisions throughout the country. Many jurisdictions have held their "closed-door" statutes inapplicable to unregistered or unqualified foreign corporations engaged in wholly interstate or foreign commerce. *See, e.g., Johnson v. MPL Leasing Corp.,* 441 So.2d 904, 905 (Ala.1983); *Leverett v. Garland Co.,* 206 Ala. 556, 90 So. 343, 344 (1921); *Hough v. Continental Leasing Corp.,* 275 Ark. 340, 630 S.W.2d 19, 21 (1982); *Herman Bros. v. Nasiacos,* 46 Colo. 208, 103 P. 301, 302 (1909); *Textile Fabrics Corporation v. Roundtree,* 39 Ill.2d 122, 233 N.E.2d 376 (1968); *Vanco v. Sportsmax, Inc.* 448 N.E.2d 1198, 1200 (Ind.Ct.App.1983); *Credit Industrial Co. v. Happel, Inc.,* 252 Iowa 213, 106 N.W.2d 667, 668 (1960); *Goodwin Bros. Leasing, Inc. v. Nousis,* 373 Mass. 169, 366 N.E.2d 38, 42–43 (1977); *Remington Arms*

As Yangming was not doing business within the meaning of § 7–301, and thus was not barred from bringing this suit, Revon's motion to dismiss should not have been granted.[10]

## JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED. APPELLEE TO PAY COSTS.

*Co. v. Lechmere Tire & Sales Co.,* 339 Mass. 131, 158 N.E.2d 134, 138 (1959); *Morrison v. Guaranty Mortgage & Trust Co.,* 191 Miss. 207, 199 So. 110, 115 (1941); *Peccole v. Fresno Air Service, Inc.,* 86 Nev. 377, 469 P.2d 397, 398 (1970); *Pennsylvania Rubber Co. v. Brown,* 83 N.H. 336, 337–338, 143 A. 703 (1928); *Materials Research Corp. v. Metron, Inc.,* 64 N.J. 74, 312 A.2d 147, 150 (1973); *Colonial Mtg. Co. v. First Federal S. & L. Ass'n,* 57 A.D.2d 1046, 395 N.Y.S.2d 798, 800 (1977); *Major Creek Lumber Co. v. Johnson,* 99 Or. 172, 195 P. 177, 181 (1921); *Redd Distributing Co. v. Bruckner,* 128 Vt. 635, 270 A.2d 580, 582 (1970); *Bulova Watch Co. v. Anderson,* 270 Wis. 21, 70 N.W.2d 243, 246 (1955); *Booth v. Magee Carpet Company,* 548 P.2d 1252, 1256 (Wyo.1976): *La Moine Lumber & Trading Co. v. Kesterson,* 171 F. 980, 982–983 (C.C.D.Or.1909) (applying Oregon law), *aff'd,* 193 F. 355 (9th Cir.1912). *Cf. Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496, 497 (1963); *Coons v. American Honda Motor Co., Inc.,* 94 N.J. 307, 463 A.2d 921, 927 (1983), *modified,* 96 N.J. 419, 476 A.2d 763 (1984), *cert. denied,* 469 U.S. 1123, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985).

**10.** In the motion to dismiss, and the order granting the motion, Revon and the circuit court chiefly relied on two federal cases. *Gkiafis v. S/S Yiosonas,* 342 F.2d 546 (4th Cir.1965), and *Egan Marine Contracting v. South Sea Shipping Corp.,* 612 F.Supp. 1 (D.Md.1983). In our view, this reliance was misplaced. The *Gkiafis* case did not involve Maryland's "closed-door" statute; instead, it was concerned with the assertion of jurisdiction over a foreign corporation and the "minimum contacts" standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The *Egan* case, while it did involve the registration requirement, relied upon cases dealing with the assertion of Maryland jurisdiction over foreign corporations. As discussed early in this opinion, however, the standards for assertion of jurisdiction under the present Long Arm Statute and the criteria for doing business under §§ 7–202, 7–203 and 7–301, are different.