5 A.3d 799 (2010)
416 N.J. Super. 436
BONNIER CORPORATION d/b/a Bonnier Corporation, Plaintiff-Appellant,
v.
JERSEY CAPE YACHT SALES, INC., Defendant-Respondent.
Docket No. A-2404-09T2
Superior Court of New Jersey, Appellate Division.
Argued September 20, 2010.
Decided October 13, 2010.
Richard C. Borton, Haddonfield, argued the cause for appellant.
Glenn M. Finkel argued the cause for respondent (Schepisi & McLaughlin, P.A., Englewood Cliffs, attorneys; Mr. Finkel, on the brief).
Before Judges LISA, REISNER, and SABATINO.
The opinion of the court was delivered by
SABATINO, J.A.D.
Plaintiff, Bonnier Corporation, appeals the Law Division's orders dismissing its collection action against defendant, Jersey Cape Yacht Sales Inc.,[1] for lack of standing because plaintiff has not obtained a certificate of authority to do business in New Jersey pursuant to N.J.S.A. 14A:13-11. Because the record does not establish that plaintiff is engaged in intrastate business *800 within New Jersey, plaintiff cannot be constitutionally deprived of its ability to sue in the courts of this State. Consequently, the trial court's orders must be reversed, and plaintiff's complaint must be restored.
We summarize the facts pertinent to our analysis from the limited record developed in the trial court. The facts are derived from certifications and documentary submissions, as there were no depositions or evidentiary hearings conducted.
Plaintiff, a Delaware corporation with corporate headquarters in Florida, publishes and sells advertising in nearly fifty special interest magazines. According to a certification from its general counsel, plaintiff does not own real estate in New Jersey and does not have offices in this State. It does not have a New Jersey telephone listing. As its general counsel attests, plaintiff "does not have any employees who are regularly in the State[.]" However, according to the general counsel, "[o]ccasionally, sales representatives [of plaintiff] may travel to [this] [S]tate to meet with customers [that are] purchasing advertising."
One of the specialty magazines published by plaintiff is "Saltwater Sportsman," a publication designed for boat retailers. Saltwater Sportsman is sold at bookstores and newsstands in many states, including New Jersey. Plaintiff purchased Saltwater Sportsmen in March 2007 from another publisher, Time for Media, Inc. ("Time").[2]
Defendant, a New Jersey corporation with its principal offices in Lower Bank, Atlantic County, is in the business of selling and servicing luxury yachts. As explained in a certification from defendant's company representative, in or about the end of 2003 or the beginning of 2004, a sales representative from Time telephoned defendant's offices and requested a meeting. The purpose of the meeting was to explore the possibility of defendant placing advertisements in Saltwater Sportsman. As a result, two sales representatives, along with two editors, visited defendant's offices; ultimately, defendant purchased advertising in the magazine. According to the defense certification, on several occasions the magazine's sales representatives "would visit our location in New Jersey bearing gifts such as towels, baseball hats, bags and other sundries."[3] Defendant's ads appeared in Saltwater Sportsman eleven times, beginning in 2006, when Time published the magazine, and continuing in 2007 and 2008, after plaintiff's acquisition.
Over time, defendant fell behind in paying its advertising bills. In particular, plaintiff's general counsel asserts that defendant's account was in arrears when plaintiff acquired the magazine in March 2007 and, as part of the acquisition, plaintiff purchased the accounts receivable relating to that debt.
Eventually, as the overdue charges mounted, plaintiff filed a collection action in the Law Division in July 2009. Its complaint against defendant sought a balance due and owing of $41,935, plus interest and other costs.
Defendant filed a motion to dismiss the complaint, asserting that, under N.J.S.A. 14A:13-11, plaintiff lacked standing to sue because it did not have a certificate of authority to transact business in New Jersey. Plaintiff opposed the motion, arguing that it has no legal obligation to obtain a certificate of authority as "[plaintiff] does *801 not transact business within the meaning of the statute." Plaintiff asserted that its business contacts with New Jersey are entirely non-local in character, and that case law prohibits New Jersey from constitutionally requiring foreign corporations engaged solely in interstate commerce to obtain a certificate of authority.
After considering the parties' written submissions, the trial court granted defendant's motion, and dismissed plaintiff's complaint for lack of standing. The complaint was dismissed without prejudice, subject to reinstatement of the action when, and if, plaintiff obtained the required certificate.[4] In its written opinion that accompanied the dismissal order, the trial court concluded that plaintiff has "engaged in commercial activities in New Jersey of a sort that requires compliance with the statute."
Plaintiff moved for reconsideration. The court denied the motion finding that reconsideration was not appropriate as the court had not misstated the law or failed to consider evidence that should have been considered. The court reiterated that "the dismissal was without prejudice, thus enabling [p]laintiff to acquire the necessary certification to pursue this case."
This appeal followed. At oral argument, we were advised that plaintiff still has not obtained a certificate of authority, apparently because of business reasons,[5] and also in light of its legal position that it conducts no intrastate business in New Jersey that would trigger the need to obtain such a certificate.
Under N.J.S.A. 14A:13-3(1), in order to transact business in the State, foreign corporations are required to procure a certificate of authority from the Secretary of State. A foreign corporation that fails to obtain the required certificate of authority is subject to the consequences of N.J.S.A. 14A:13-11. Subsection (1) of the statute recites in relevant part:
No foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.
[N.J.S.A. 14A:13-11(1).]
The statute also imposes a fine for each year that such a non-compliant company fails to obtain the requisite certificate. Id. at -11(3). The apparent objective of this statute is to encourage foreign corporations that conduct business in this State to make their presence formally known, through the Secretary of State, to State regulators and taxing authorities, and further to assure, among other things, that such companies designate a registered agent in New Jersey upon whom they may be served with process.
The United States Supreme Court has held that the State's power to compel a foreign corporation to obtain a certificate under N.J.S.A. 14A:13-11 is constitutionally limited under the Commerce Clause, U.S. Const. art. 1, § 8, cl. 3. The Court *802 examined this issue in Eli Lilly & Co. v. Sav-On-Drugs, Inc., 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). In that case, the Court considered the application of N.J.S.A. 14:15-4 (now N.J.S.A. 14A:13-11) to an Indiana pharmaceutical company that had filed an action in the Superior Court without first obtaining a certificate of authority. The company argued that the State's imposition of the certificate requirement unduly burdened interstate commerce, and therefore violated the Commerce Clause.
The Court majority in Eli Lilly noted that, for purposes of the Commerce Clause analysis, it is critical whether the foreign corporation's presence in the State is confined to interstate business or whether the corporation also engages in intrastate commerce. As Justice Black wrote for the majority, "[i]t is well established that New Jersey cannot require [a foreign corporation] to get a certificate of authority to do business in the State if its participation in [its] trade is limited to its wholly interstate sales to New Jersey wholesalers." Id., 366 U.S. at 278, 81 S.Ct. at 1318, 6 L.Ed.2d at 291. Reaffirming the principles of the Court's earlier so-called "drummer" cases, which involved situations in which sales agents were sent by a company into another State to solicit (or "drum up") business across state lines, the Court observed in Eli Lilly that a foreign corporation
is free to send salesmen into New Jersey to promote this interstate trade without interference from regulations imposed by the State. On the other hand, it is equally well settled that if [the foreign corporation] is engaged in intrastate as well as interstate aspects of the . . . business, the State can require it to get a certificate of authority to do business.
[Id., 366 U.S. at 279, 81 S.Ct. at 1318, 6 L.Ed.2d at 291-92 (emphasis added).]
Applying these seminal constitutional precepts to the facts in Eli Lilly, the Court concluded that the plaintiff was doing business in New Jersey and therefore the plaintiff was required to comply with New Jersey statutes. The plaintiff maintained an office in Newark; the office was leased by a district manager, who supervised a secretary and eighteen "detailmen." The detailmen working out of the Newark office visited local retail pharmacists, physicians, and hospitals in New Jersey, touting the plaintiff's products. The Court held that, because the plaintiff maintained an office and employees in New Jersey, and because those employees regularly sold directly to New Jersey retailers rather than only to wholesalers, the plaintiff was engaged in intrastate commerce. Id., 366 U.S. at 280, 81 S.Ct. at 1319, 6 L.Ed.2d at 293-94. Therefore, requiring the plaintiff to obtain a certificate was not forbidden by the Commerce Clause of the Constitution. Id., 366 U.S. at 284, 81 S.Ct. at 1321, 6 L.Ed.2d at 294.
Ensuing published cases in this State involving N.J.S.A. 14A:13-11 have applied these guiding principles. For example, in Materials Research Corp. v. Metron, Inc., 64 N.J. 74, 312 A.2d 147 (1973), the plaintiff, a New York corporation with its principal offices in New York, manufactured and sold scientific equipment. The plaintiff did not maintain an office in New Jersey, nor a New Jersey telephone number. The plaintiff employed eight "sales engineers," who would explain the company's product lines to potential New Jersey customers. The sales engineers took orders, which were subject to the approval of a regional sales manager or officer at the company's New York office. The corporation filed an action in the New Jersey courts against the defendant, alleging malicious interference with the plaintiff's contractual *803 relationships with its employees. Id. at 77, 312 A.2d 147.
Applying the constitutional tests set forth in Eli Lilly, the New Jersey Supreme Court held in Materials Research that there was an insufficient showing that plaintiff was engaged in intrastate commerce, and therefore the plaintiff was not barred from maintaining the action. Id. at 84, 312 A.2d 147. Our Supreme Court likened the plaintiff's scenario to the "drummer" decisions, citing the leading case of Robbins v. Shelby County Taxing Dist., 120 U.S. 489, 7 S.Ct. 590, 30 L.Ed. 694 (1884), which held that "bare solicitation of orders did not constitute the transacting of business for qualification purposes." Id. at 82, 312 A.2d 147 (citing Robbins, supra). The Court acknowledged in Materials Research that "solicitation with some additional elements may take a case across the threshold of intrastate commerce." Id. at 83, 312 A.2d 147. However, the Court found no such additional elements that would constitutionally justify the application of N.J.S.A. 14A:13-11 to the plaintiff. Id. at 84, 312 A.2d 147.
By comparison, in Davis & Dorand, Inc. v. Patient Care Med. Serv., Inc., 208 N.J.Super. 450, 506 A.2d 70 (Law Div. 1985), the plaintiff was a New York advertising agency with no offices in New Jersey and no New Jersey telephone listing. The ad agency had an ongoing arrangement for two years with the defendant, a New Jersey home health care company, to place ads for that company, specifically in local New Jersey newspapers and in other New Jersey media outlets. When it was sued by the plaintiff for alleged non-payment, the defendant in Davis & Dorand moved to dismiss the action because the plaintiff had not procured a certificate of authority. The Law Division granted the motion, holding that that the plaintiff's activities involved sufficient intrastate commerce so as to obligate the plaintiff to comply with the statute. Id. at 456, 506 A.2d 70.
In reaching that conclusion, the court in Davis & Dorand analogized the facts to those in Eli Lilly, in which the plaintiff's sales personnel targeted the needs of its New Jersey customers, which they fulfilled through New Jersey suppliers. Id. at 456, 506 A.2d 70. In that respect, Davis & Dorand exemplifies and carries out an important principle from Eli Lilly and from other United States Supreme Court precedent: that intrastate commerce is present when a party induces "one local merchant to buy a particular class of goods from another." Eli Lilly, supra, 366 U.S. at 282, 81 S.Ct. at 1320, 6 L.Ed.2d at 293 (quoting Cheney Bros. v. Massachusetts, 246 U.S. 147, 155, 38 S.Ct. 295, 297, 62 L.Ed. 632, 637 (1918)). The plaintiff in Davis & Dorand was therefore deemed to have engaged in intrastate activity by placing ads for its customers in New Jersey newspapers and other local media.
Although the record before us is limited, it is apparent that defendant, as the moving party invoking what are, in essence, the windfall benefits of N.J.S.A. 14A:13-11, has failed to sustain its burden by demonstrating that plaintiff has engaged in intrastate commerce within this State. It is undisputed that Saltwater Sportsman and the other magazines published by plaintiff are national publications not purely local in nature. There is no indication in the record that the ads placed by defendant were selectively inserted only in New Jersey editions or versions of the magazine.
We are mindful that the parties disagree as to whether the company representatives who visited defendant at its New Jersey offices had the authority to bind the publisher to the ad contract without approval from the publisher's out-of-state headquarters. *804 However, that disagreement does not affect our legal conclusion. Even if we assume, for the sake of argument, that the contracts were consummated in New Jersey, that does not change the key fact that the ads were run in a national magazine, and not in a local media outlet. There is nothing before us to support defendant's claim that plaintiff is engaged in intrastate commerce within New Jersey as defined in Eli Lilly.
For these reasons, we reverse the Law Division's dismissal of plaintiff's complaint. The complaint is reinstated, and the case is remanded for further proceedings consistent with this opinion. We do note that our disposition does not foreclose defendant, if it so chooses, from hereafter taking limited discovery on the intrastate/interstate issues, and seeking further consideration from the trial court if the factual predicates about plaintiff's business contained in the present record turn out to be materially inaccurate.
Reversed and remanded.
NOTES
[1] Incorrectly pleaded as Jersey Cape Yacht Sales Incorporated.
[2] The briefs also refer to the former publisher as "Time, Inc."
[3] The certification does not clarify whether any of these promotional visits occurred after plaintiff acquired the magazine. In any event, the timing is not pivotal to our analysis.
[4] Defendant has not argued that the appeal is interlocutory. Given plaintiff's continued unwillingness to obtain a certificate, the orders appealed from are essentially final, and the "without prejudice" aspect of the dismissal does not affect our appellate jurisdiction. Cf. Grow Company, Inc. v. Chokshi, 403 N.J.Super. 443, 462, 959 A.2d 252 (App.Div.2008) (noting that a "without prejudice" dismissal may operate as a final adjudication where it is imposed by the court, and where it is not a disposition negotiated by the parties in order to manufacture appellate jurisdiction).
[5] N.J.S.A. 14A:4-1(1) requires that "every foreign corporation authorized to transact business in this State shall continuously maintain a registered office in this State."