**In re TOPCROFT, INC., Debtor.**

**DnC AMERICA BANKING CORPORATION, Plaintiff,**

v.

**TOPCROFT, INC., et al., Defendants.**

**Bankruptcy No. 89–20505.**
**Adv. No. 90–2012.**

United States Bankruptcy Court,
D. New Jersey.

Dec. 13, 1990.

---

Cohn & Lifland by Jeffrey Herrmann, Saddle Brook, N.J., for DnC America Banking Corp.

Jaffe & Schlesinger by Robert Jaffe, and Jeffrey M. Steinberg, Springfield, N.J., for Topcroft, Inc., Leonard A. Codella and John D. Yursha.

Stern, Steiger, Croland, Tanenbaum & Schielke by David J. Klein, Paramus, N.J., for Prospect Park Savings Bank, S.L.A.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime by Richard D. Trenk, Roseland, N.J., for Kendall G. Hunnewell, Jr. and William Wright.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This case came before me for hearing on several motions filed in the above-captioned adversary proceeding and a motion to lift the stay in the main case which is related to the subject matter of the complaint. Because the decision on the motions to dismiss and for summary judgment filed by certain defendants, namely the debtor, Leonard A. Cordella and John D. Yursha, will moot or otherwise affect other motions pending in this proceeding, the court has elected to rule on those other motions at a later time.

The complaint filed by DnC America Banking Corporation (DnC) is a foreclosure complaint wherein DnC seeks foreclosure of the mortgage held by it on the improved real estate which constitutes the assets of the debtor's estate. This action was commenced in the Superior Court of the State of New Jersey, Chancery Division, in Somerset County, by the filing and service of a

summons and complaint, filed November 6, 1989, and served November 15.

The defendants filed and served their answer and counterclaim on December 4, 1989; the petition for relief in this case was filed by the debtor on the following day. The foreclosure action was removed to the United States District Court for the District of New Jersey on December 14, 1989 and was referred this court by order dated January 1, 1990.

In the motion to dismiss the complaint, defendants assert DnC is precluded from bringing the action under state law due to its failure to comply with the registration provisions applicable to foreign banks under the New Jersey Banking Act. N.J.S.A. 17:9A–318. In their motion for summary judgment, defendants request that this court find in their favor on the counterclaims and declare that the mortgages and guarantees they executed are null and void as the fruits of an illegal loan transaction. Defendants do not, however, request that this court nullify the underlying debt; at oral argument, counsel made it clear that it is the nullification of all documents which provide security for the debt which it seeks, and not avoidance of the debt. The debtor also asserts that claim should be treated merely as a general, unsecured claim.

DnC asserts that it is protected by the exemption in the Banking Act contained in N.J.S.A. 17:9A–331. That section provides, in relevant part:

Nothing in this article shall prohibit a foreign bank from ...

(3) enforcing in this State obligations heretofore or hereafter acquired by it in the transaction of business outside of this State ...;

(4) acquiring, holding, leasing, mortgaging, contracting with respect to, or otherwise protecting or conveying property in this State heretofore or hereafter

assigned, transferred, mortgaged or conveyed to it as security for, or in whole or in part satisfaction of a loan or loans made by it or obligations acquired by it in the transaction of business outside of this State....

N.J.S.A. 17:9A–331(3 and 4). It is DnC's argument that the loan was obtained and closed in New York, payments were made in New York, and the mortgage serving as security for the debt is precisely within the exception contained in the statute above-quoted. It therefore asserts that its mortgage constitutes a valid first lien enforceable in the New Jersey state courts, and it is a creditor holding security and should be treated as such.

The instant motions concern matters affecting the administration of the estate, motions regarding the stay and regarding the extent and validity of liens on property of the estate. As such, these are core proceedings under 28 U.S.C. § 157(b)(2)(A, B, G, and K). This opinion constitutes the court's findings of fact and conclusions of law under Fed.R.Civ.P., Rule 52 and Bankruptcy Rule 7052.

## DISCUSSION

DnC was incorporated as a bank under the laws of the State of New York. According to the parties, it is a wholly owned subsidiary of Den Norske Credit Bank, a Norwegian banking concern.

The parties agreed at oral argument that DnC does not fit New Jersey's statutory definition of a "foreign bank" as stated in N.J.S.A. 17:9A–315,[1] but does qualify as a bank under New York law. The New Jersey definition requires that a foreign financial institution offer some or all of the services specified in three statutes or possess certain powers also there specified. See N.J.S.A. 17–9A–24, –25, –28 and –315. Essentially, unless such institution offers

---

1. That statute provides as follows:

For the purposes of this article, "foreign bank" shall mean a corporation, other than a banking institution, organized under the laws of the United States, a territory or possession of the United States, another state, or a foreign government, which is authorized by the laws under which it is incorporated to exercise some or all of the powers specified in paragraph (4) of section 24, paragraphs (4), (5) and (13) of section 25, and paragraphs (3), (4), (5), (6), (7), (8), and (9) of section 28. [Reporter's notes omitted.]

checking and savings accounts or safety deposit box service, or can act in a fiduciary capacity, it will not qualify as a foreign bank under the New Jersey statute.

DnC neither offers such services nor can act in any fiduciary capacity in New Jersey, according to the concessions made by its counsel at the hearing. It is, therefore, more like an investment company as such is defined in N.J.S.A. 17:16A–1, which provides that an investment company is a corporation, foreign or domestic, which makes, issues, or guarantees investment contracts and is not, among other things, a bank.

Both the provisions of law relating to foreign banks and relating to investment companies require that banks or companies doing business in this state be registered, which requires them to provide financial data on an annual basis and, in certain instances, to deposit funds as bond protection. N.J.S.A. 17:9A–317—325 and 17:16A–2—6. The statutory scheme also provides for minimum financial deposits, safeguards, and for regulation by the Commissioner of Insurance and Banking to the extent necessary to protect depositors and customers in this State. *Ibid.*

In this case, DnC has asserted it is protected by the exemption provision of the Banking Act which excludes foreclosure actions of the type at issue from compliance with the registration requirement. The debtor concedes DnC qualifies as a bank under the applicable New York law defining banks, but asserts it must also qualify under New Jersey law in order to take advantage of the exemption DnC asserts applies to this matter.

New Jersey's laws governing the creation of banks and maintenance of their business is a comprehensive statutory scheme. It has defined most (if not all) types of financial institutions which may seek to do business in this state, including foreign banks.

It is a cardinal rule of statutory construction that the intention of the Legislature is to be derived from a view of the entire statute and that all sections must be read together in the light of the general intent of the act so that the auxiliary effect of each individual part of a section is made consistent with the whole. [Citations omitted.]

When the Legislature has clearly defined a term, the courts are bound by that definition. [Citations omitted.] *Febbi v. Division of Employment Security*, 35 N.J. 601, 174 A.2d 481 (1961).

The New Jersey banking statutes clearly define "foreign bank" (N.J.S.A. 17:9A–315) and then provide exemptions for the transaction of certain business activities of "foreign banks" from the regulatory scheme. N.J.S.A. 17:9A–331. Since DnC does not qualify as a "foreign bank," and since only a foreign bank as defined in the New Jersey statute may take advantage of the exemption provision, DnC cannot claim a privilege which it is not statutorily qualified to claim.

■ It is interesting to note that DnC has never sought to be treated as anything other than a foreign corporation with regard to its business activities in this State, as evidenced by the reports of its business activities filed annually for the years since this and other loans were made by it to New Jersey residents which were secured by mortgages. These reports are only required of foreign corporations under the Reporting Act, N.J.S.A. 14A:13–10, and not of foreign banks *American Bank & Trust Co. of Pennsylvania v. Lott*, 99 N.J. 32, 490 A.2d 308 1985). It follows that a decision was made at some point by a person in authority with DnC that it was a foreign corporation under New Jersey law rather than a foreign bank; DnC may not now assert a different identity in this state in order to evade the effect of its failure to register under the Corporations Act, N.J.S.A. 14A:1–1 *et seq.*, and proceed with its foreclosure of the debtor's mortgage under an exemption granted to a different type of entity which is not generally available. It is, in fact, estopped to do so.

■ In like vein, DnC's assertion that it is empowered by the New York laws under which it is incorporated to offer the services and possess the powers which a bank must offer or possess to meet the New

Jersey definition of "foreign bank" is to no avail. The New Jersey statutes do not refer to nebulous authorizations; the language is clear and unambigious, and requires that the bank seeking to qualify under N.J.S.A. 17:9A–315 must currently offer those services or have those powers. Since DnC does not, it cannot qualify under the literal requirements of the statute.

In any event, neither foreign banks nor foreign corporations who have failed to comply with applicable provisions of law may bring an action to enforce obligations in this state. N.J.S.A. 17:9A–330A and 14A:13–11. DnC has complied with neither Act and cannot claim protections offered under them. It follows that it may not be heard in state court on a request to enforce obligations of New Jersey residents.

DnC next argues that regardless of whether it should be treated as a foreign bank, corporation, or investment company, any bar to access to the courts contained in the statutes violates the interstate commerce clause of the Constitution of the United States. Const. Art. I, § 8, cl. 3. It asserts such a ban, being an enforcement provision of an unconstitutional registration requirement, cannot be enforced by this court and cites in support thereof *First Family Mortgage Corp. v. Durham*, 108 N.J. 277, 528 A.2d 1288 (1987).

The "negative aspect" of the Commerce Clause prohibits state regulation of business which amounts to economic protectionism. *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988). When a state law clearly discriminates against interstate commerce, it will be held violative of this clause unless it may be justified by a demonstration that it furthers legitimate state interests which cannot be served by less burdensome means. *Ibid; Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986).

The United States Supreme Court has recognized the importance of banking and financial services as matters of local concern. In *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980), the court reviewed a Florida law which prohibited ownership of local investment and trust companies by foreign concerns. The court held the limitations of the commerce clause do not permit the states to prohibit ownership of such companies where ownership of nonfinancial companies is not so restricted. *Ibid.*, 447 U.S. 27, at 43, 100 S.Ct. 2009, at 2019.

In *Lewis*, as here, the foreign financial institution argued the statute prohibited interstate commerce and should be struck down as protectionist legislation. The court in *Lewis*, however, indicated in *dicta* that not all such statutes run afoul of the commerce clause; rather, in that case the legitimate local governmental purpose was not furthered by the statute due to its uneven application. *Ibid*, 447 U.S. 27, at 44, 100 S.Ct. 2009, at 2019–20.

In this case, the New Jersey statutes governing establishment and operation of domestic financial institutions are quite comprehensive, and the organizational and financial data which such corporations are required to report to the Commissioner of Banking and Insurance is aimed at providing the regulatory agency with information necessary to ascertain the health of banking community members. It furthers the state's interest in protecting its citizens from the evils which could result from bank failure by stringently requiring domestic banks to provide information necessary to determine that health.

In contrast, that information is not readily available from foreign financial institutions incorporated under the laws of other states or countries. Therefore, the regulatory scheme applicable to foreign banks requires them to report summaries of such information as is required to determine that they are: duly chartered and existing; of sound financial health, and; capable of providing services to New Jersey customers which they can expect of domestic corporations of similar ilk.

The necessity for such information is more patent today than in 1980 when *Lewis* was decided, and the Supreme Court noted the profundity of local concern over bank chartering and regulation. *Lewis*, 447 U.S. 27, 42, 100 S.Ct. 2009, 2018–19, 64 L.Ed.2d

**240**

702 (1980). In these days of savings and loan failures, bank failures, and even the failure of the Federal Savings and Loan Insurance Corporation, the governmental purpose to protect it citizenry is best served by regulation requiring the registration of all banking corporations, not just domestic ones, and the concomitant financial reporting. In a financial climate such as we now face, where banking problems have created a pervasive fear in depositors and eroded the public confidence in the banking system, regulations governing reporting; qualification to do business, and providing for minimum data necessary to inspection for fiscal health ought to be strictly enforced. Under the facts and circumstances of this case, the court sees no violation of the commerce clause through application of the regulations at issue to DnC, and holds it is properly governed thereby.

■ In light of the above, the court must now determine the effect DnC's failure to comply with valid and enforceable state regulations has upon the mortgage securing the debtor's indebtedness. The New Jersey legislature has determined that entities doing business in this state in violation of the regulations governing financial institutions and corporations are guilty of a misdemeanor. N.J.S.A. 14A:13–20, 17:9A–316 and 330, and 17:16A–2 and 20. This evidences an intent by the legislature to prohibit such business every bit as evident as that exhibited by the bar to use of the state's courts discussed above.

■ Generally, the law will not permit the party doing business in violation of the law to profit from the illegal contract resulting therefrom and the contract, together with all other documents executed therewith or in furtherance thereof, are declared void. *In re Kennerly*, 90 B.R. 781 (Bankr. D.S.C.1987). In cases controlled by federal law, no such contract can be enforced because to do so is to compel performance of obligations which are created against the public policy as established by the laws enacted by Congress. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982).

In this case, the State of New Jersey has determined the appropriate remedy is to bar access to the courts to enforce the obligations created by such contracts. The only obligation created by these contracts which is governed by New Jersey law and enforceable only in its courts is the mortgage securing the underlying loan. It is this court's opinion that the mortgage cannot be enforced under the statutory scheme for the reasons discussed above.

■ Under 11 U.S.C. § 506, only claims allowed by the court and secured by liens on property of the estate are secured claims. Since the instrument creating the security for the debt is void, *c.f. Abrams & Co., Inc. v. Dewey's Garage, Inc.*, 58 N.J. Super. 266, 156 A.2d 169 (App.Div.1960) (identical result in case construing New York law), the debt must be treated as a general, unsecured claim due to the lack of an enforceable lien. 11 U.S.C. §§ 101(33), 502(b)(1), and 506(a). The court therefore holds DnC is a general creditor of this estate holding an unsecured claim.