**In re TOPCROFT, INC., Debtor.**

**DnC AMERICA BANKING CORPORATION, Plaintiff–Appellant,**

**v.**

**TOPCROFT, INC., et al., Defendants–Respondents.**

Civ. A. No. 91–905(HAA).
Bankruptcy No. 89–20505.
Adv. No. 90–2012.

United States District Court,
D. New Jersey.

Dec. 12, 1991.

Jeffrey Walter Herrmann, Cohn & Lifland, Saddlebrook, N.J., for appellant.

Howard Gary Schlesinger, Jaffe & Schlesinger, Springfield, N.J., for appellees.

Jeffrey S. Feld, Cole, Schotz, Bernstein, Meisel & Forman, Hackensack, N.J., for trustee.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This matter comes before the court on an appeal by the plaintiff-appellant, DnC America Banking Corporation ("DnC"), of two orders of the United States Bankruptcy Court. The first granted the defendant-respondent, Topcroft's motion to dismiss and for partial summary judgment and invalidated DnC's mortgage lien. The second denied DnC's motion for relief from the automatic stay. I have jurisdiction to entertain this appeal under 28 U.S.C. § 158, "[t]he district courts of the United States shall have jurisdiction to hear the appeals from final judgments, orders, and decrees, and with leave of the court, from interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges ..." 28 U.S.C. § 158(a). I decide this motion without oral argument pursuant to Federal Rules of Civil Procedure 78.

The bankruptcy court based its decision to invalidate the mortgage on DnC's failure to comply with three New Jersey statutes: the Banking Act, N.J.S.A. 17:9A-1 et seq., the Investment Company Act, N.J.S.A. 17:16A-1 et seq., and the Business Corporation Act, N.J.S.A. 14A:13-1 et seq. DnC contends that it is a "foreign bank" and as such New Jersey statutory law does not require that DnC register under any of these statutes in order to be able to enforce the mortgage in issue. The plaintiff further contends that even if registration were required under the New Jersey statutory scheme failure to do so could not result in

the voiding of its mortgage. Finally, plaintiff contends that as its mortgage is valid and enforceable and the debtor has no equity relief from the automatic stay is proper.

The defendant-respondent, Topcroft, Inc., contends that the Bankruptcy Court's decision should be affirmed. Topcroft argues that the findings of the bankruptcy court are fully supported by the record and applicable law and should be upheld. Specifically defendant argues that this Court should affirm Judge Tuohey's conclusions that 1) DnC was estopped from asserting that it qualified as a foreign bank under the New Jersey Banking Act; and 2) the mortgage lien obtained by DnC against the Debtor, having been obtained in absence of compliance with valid and enforceable state regulations, is the tainted fruit of an illegal contract, and therefore not enforceable in bankruptcy court by the plaintiff.

The Chapter 11 Trustee, Sanford I. Feld, though he did not participate in the adversary proceeding below, also submitted a brief on this appeal. He contends that the case should be remanded to the bankruptcy court for further findings of fact and conclusions of law concerning whether DnC is a foreign investment company doing business in New Jersey, and to give the plaintiff an opportunity to comply with New Jersey corporate law. The Trustee further contends that DnC is not entitled to relief from the automatic stay and that the case should be remanded to the bankruptcy court for further findings on the extent, validity, and priority of the mortgage lien and for findings concerning Topcroft's counterclaims.

Background and Procedural History

In May of 1987 DnC agreed to lend the defendant, Topcroft, $8,500,000.00, and received as collateral a mortgage on certain property owned by Topcroft in Franklin, New Jersey. The loan as well as the documents, including the mortgage were negotiated at DnC's office in New York.

On or about November 6, 1989, the plaintiff, DnC, filed a complaint against the debtor in the New Jersey Superior Court, alleging that Topcroft had failed to make monthly payments as required by the mortgage and seeking to foreclose on the mort-

gage it received from the defendant, Topcroft, to secure a $8,500,000.00 loan made by DnC in May of 1987. Topcroft answered the complaint on December 4, 1987, and on December 5, 1989 filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey. On December 14, 1989, Topcroft removed the foreclosure action to this Court and on January 1, 1990, this Court referred the foreclosure action to the Bankruptcy Court.

On January 12, 1990, Topcroft moved for the entry of an Order (1) dismissing the foreclosure complaint on the grounds that DnC had failed to register to do business pursuant to N.J.S.A. 17:9A–318, and (2) declaring the mortgage lien to be null and void as the fruit of an illegal transaction under New Jersey law. Subsequently, on April 25, 1990, DnC moved to modify the automatic stay and for summary judgment on the removed foreclosure complaint. The Bankruptcy Court heard oral argument on the cross-motions on May 21, 1990, adjourned the motions without prejudice and directed counsel to expedite discovery. On September 24, 1990, the Honorable William F. Tuohey entered an order directing the appointment of a Chapter 11 Trustee and Sanford I. Feld accepted the appointment on October 2, 1990.

On October 31, 1990, the Bankruptcy Court heard the oral argument of counsel and on December 13, 1990, rendered an opinion invalidating the mortgage lien of DnC and denying DnC relief from the automatic stay. 122 B.R. 235. The bankruptcy court found that DnC was not a "foreign bank" within the meaning of the New Jersey Banking Act, N.J.S.A. 17:9A–1 et seq., but rather "more like an investment company as such is defined in N.J.S.A. 17:16A–1". See Bankruptcy Opinion ("Bank. Op.") 122 B.R. at 238. The Court found that DnC violated New Jersey law by failing to register as a foreign corporation as required by the statute regulating investment companies, N.J.S.A. 17:16A–1, –6, and that these regulations do not violate the Commerce Clause of the United States Constitution. *Id.* at 239, 240. Judge Tuohey found that the mortgage is unenforceable because it was made in violation of the New Jersey statutory scheme. Finally, the Bankruptcy Court found that as the loan transaction was illegal, the mortgage is void and consequently DnC is a general unsecured creditor who may not get relief from the stay. *Id.* at 240.

The Standard of Review

■ Bankruptcy Rule 8013 sets forth the standard of review for appeals from Orders of a Bankruptcy Court. Findings of fact will be upheld "unless clearly erroneous". See Bankruptcy Rule 8013; *Resyn Corp. v. United States*, 851 F.2d 660, 664 (3rd Cir. 1988). In defining the term "clearly erroneous" the United States Supreme Court has stated that "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 527, 92 L.Ed. 746 (1948). Legal conclusions are subject to plenary review. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3rd Cir.1988).[1]

Background

I. *Interstate Commerce*

■ Initially I note that under all three statutory schemes cited by the Bankruptcy Court, the Banking Act, N.J.S.A. 17:9A–1 et seq., the Investment Company Act, N.J.S.A. 17:16A–1 et seq., and the Corporations Act, N.J.S.A. 14A:13–11, the prohibitions against an unregistered foreign corporation maintaining an action in New Jersey will only come into play if the foreign corporation has engaged in intrastate business within the state of New Jersey. This is true based both on the plain language of the statutes and under the Commerce Clause of the United States Constitution.

---

1. I note that Judge Tuohey did not make separate findings of fact in his opinion. Thus I must distinguish his legal findings from his factual findings and apply the two separate standards of review.

The penalty section of the New Jersey Banking Act precludes foreign banks from bringing suits arising from the transaction of business within New Jersey without a certificate. Section 17:9A–330 provides in pertinent part:

A. A foreign bank shall not be entitled to maintain any action in any court of this State on any cause of action arising out of its transaction of business *in this state* in violation of the provisions of this article.

N.J.S.A. 17:9A–330 (emphasis added). Similarly, the Investment Company Act only precludes doing business within the state of New Jersey without a certificate:

Prohibition to do business. No investment company as defined in this chapter shall undertake the transaction of an investment business *in this State* until it shall have complied with the applicable requirements of this chapter and shall have received the certificate of authority of the Commissioner of Insurance ...

N.J.S.A. 17:16A–2 (emphasis added). Finally, the Corporations Act states:

(1) No foreign corporation transacting business *in this State* without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.

N.J.S.A. 14A:13–11 (emphasis added).

The language of these statutes is reinforced by the Supreme Court's jurisprudence on the Commerce Clause of the United States Constitution. This clause reads in pertinent part:

The Congress shall have Power ...

To regulate Commerce ... among the Several States.

United States Constitution, Article I, § 8. In 1910, the Supreme Court first recognized the right of access to state courts in order to enforce an interstate contract. The Court held that a statute preventing a foreign corporation from bringing suit in another state's courts was tantamount to requiring a license and that when the corporation was engaged in interstate business such a prohibition violated the Commerce Clause and was unconstitutional.

*International Text–Book Co. v. Pigg,* 217 U.S. 91, 108–09, 30 S.Ct. 481, 485, 54 L.Ed. 678 (1910). Subsequently, the Supreme Court has reaffirmed that a state may not prevent corporations from seeking to enforce contracts based on interstate transactions. See *Dahnke–Walker Milling Co. v. Bondurant,* 257 U.S. 282, 291, 42 S.Ct. 106, 109, 66 L.Ed. 239 (1921). More recently, the New Jersey Supreme Court struck down as unconstitutional a statutory provision that prevented a foreign corporation from foreclosing on a mortgage because of its failure to comply with the New Jersey Business Activities Reporting Act.

Applying a balancing test, we find that the state's interests in maintaining compliance with the Reporting Act is insufficient to justify the burden placed on interstate commerce by N.J.S.A. 14A:13–20b. Without the right to enforce contracts made in interstate commerce, the right to engage in such commerce is severely restricted. This stiff sanction applies without regard to whether the corporation is actually liable for any tax.

*First Family Mortgage Company v. Durham,* 108 N.J. 277, 289, 528 A.2d 1288 (1987), appeal dismissed, 487 U.S. 1211, 108 S.Ct. 2860, 101 L.Ed.2d 897 (1988). Thus there is no bar to DnC's action if it arises from an out of state transaction.

In *Materials Research Corp. v. Vetron,* 64 N.J. 74, 312 A.2d 147 (1973), the New Jersey Supreme Court discussed what constitutes doing business within the state of New Jersey in the context of the New Jersey statute governing the licensure of foreign corporations. The Court noted "that 'doing business' is a term not susceptible of precise definition automatically resolving every case, and that each case must be dealt with on its own circumstances to determine if the foreign corporation has engaged in local activity or interstate commerce." Id. at 79, 312 A.2d 147. The Court held that:

To be sure, solicitation [of business within New Jersey] with some additional elements may take a case across the threshold of intrastate commerce. Without attempting to catalogue all those "addition-

al elements," we suggest weight might be given to such factors as a salesman having binding authority or approving contracts himself rather than forwarding them to a sales office or a home office for approval.

Id. at 83, 312 A.2d 147. The Court concluded that the plaintiff corporation which had no New Jersey office, required contracts to be approved in the home office in New York, and had a telephone listing in New Jersey which had a tie line to New York was not transacting business in New Jersey. Id. at 81, 312 A.2d 147.

In the instant case the Bankruptcy Court did not reach, and consequently made no findings about whether DnC's activities amounted to doing business within the State of New Jersey. Thus I must remand this case to the Bankruptcy Court for a determination of whether DnC was engaged in purely interstate commerce and thus would be permitted, pursuant to all of these New Jersey statutes, to maintain an action to foreclose upon the property mortgaged by Topcroft.

II. *DnC's Status as a Foreign Bank, Investment Company, or Foreign Corporation*

█ If DnC is found to be engaged in intrastate business in New Jersey its classification as a foreign bank, an investment company or a foreign corporation becomes important. This will determine which of the three New Jersey statutory schemes govern the transaction and consequently whether the mortgage is enforceable and valid. The Bankruptcy Court held that DnC is not a "foreign bank" within the meaning of the New Jersey Banking Act and was estopped from claiming to be such. Judge Tuohey found that DnC is "more like an investment company". 122 B.R. at 238.

DnC's Status as a Foreign Bank

DnC contends that it is a "foreign bank" within the definition of the New Jersey Banking Act, N.J.S.A. 17:9A–1 et seq., and thus, though not registered to do business in New Jersey, DnC argues that it may maintain a mortgage foreclosure action in a

New Jersey court pursuant to the statutory exception to the registration requirement found in N.J.S.A. 17:9A–331. Topcroft argues that the bankruptcy court's finding that DnC does not qualify as a foreign bank should be upheld because DnC, although authorized by New York law to perform certain activities listed in the definition of a foreign bank, does not actively engage in them and thus must be excluded from the statutory definition. See 122 B.R. at p. 238; Topcroft Brief at 15.

The New Jersey Banking Act defines "foreign bank" as follows:

For the purposes of this article, "foreign bank" shall mean a corporation, other than a banking institution, organized under the laws of the United States, a territory or possession of the United States, another state, or a foreign government, which is authorized by the laws under which it is incorporated to exercise some or all of the powers specified in paragraph (4) of Section 24, paragraphs (4), (5) and (13) of section 25, and paragraphs (3), (4), (5), (6), (7), (8), and (9) of section 28.

N.J.S.A. 17:9A–315. The specified powers include authorization to maintain and rent safety deposit boxes, to receive and furnish security for deposits, to maintain a savings department, to act as the fiscal agent of the United States, and of any corporation, state, county, municipality, board commission or other body politic, and to perform various fiduciary powers including to act as the transfer agent or registrar of stock certificates, bonds or other evidences of indebtedness of any body politic or foreign or domestic corporation, to act as trustee of securities, to be appointed the executor, trustee, guardian of any estate or person, to be appointed a receiver or trustee by court appointment, or to administer or be named as the trustee of a trust. N.J.S.A. §§ 17:9A–24, –25 & –28.

█ DnC is a corporation organized under Article XII of the Banking Law of the State of New York, Banking Law §§ 508–20. Section 508 of the New York Banking Law enumerates some of the powers of such a corporation including, among other

things, authorizing it, "[w]ith the approval of the banking board" and subject to its conditions,

> (a) to act as financial agent of the United States government and as depository of public money of the United States ...
> (b) to engage in the business of receiving deposits outside this state.

New York Banking Law § 508(3). As these are both powers referred to in the New Jersey Banking Act's definition of a "foreign bank", the question becomes whether DnC has the approval of the banking board to perform these duties and thus is "authorized" by New York law "to exercise" these powers. I note that Judge Tuohey construed the New Jersey Banking Act's definition of "foreign banks" to require that the banks be actually engaged in some or all of the enumerated activities, holding that mere authorization is not sufficient to qualify an entity as a "foreign bank." The Court explained:

> The New Jersey Statutes do not refer to nebulous authorizations; the language is clear and unambiguous, and requires that the bank seeking to qualify under N.J.S.A. 17:9A–315 must currently offer those services or have those powers.

122 B.R. at 239. As the Court concluded that DnC was not engaged in any of the enumerated activities, it held that DnC is not a "foreign bank" within the meaning of the statute.[2] However, the plain language of the statute requires only that a corporation be "authorized by the laws under which it is incorporated to exercise some or all of the powers specified." It is well settled that when interpreting a statute in which the language is unambiguous on its face, only a showing of clear legislative intent justifies altering the plain meaning of the statute. *Mortimer v. Board of Review*, 99 N.J. 393, 398, 493 A.2d 1 (1985). Apparently, no showing of contrary legislative intent was presented to the Bankrupt-

cy Court or to this Court; consequently, the plain language of the statute must govern and the dispositive inquiry is whether DnC was authorized by New York law to perform any of the enumerated functions. To the extent that the Bankruptcy Court concluded that the plain meaning of the statute should be altered this conclusion is contrary to law and must be reversed. As Judge Tuohey did not make any findings about whether or not DnC is actually authorized to perform these functions, the case must be remanded to the bankruptcy court for such findings.

The Bankruptcy Court also found that the fact that DnC filed Business Activities Reports pursuant to N.J.S.A. 14A:13–20 indicates that DnC consistently regarded itself and sought to be treated as a foreign corporation, not a foreign bank. This statutory provision, which requires foreign corporations to provide certain information to the State of New Jersey, was held in *American Bank & Trust Co. of Pennsylvania v. Lott*, 99 N.J. 32 (1985) not to apply to foreign banks. The Bankruptcy Court held that DnC is "estopped" from "now assert[ing] a different identity in this state in order to evade the effect of a failure to register under the Corporations Act, N.J.S.A. 14A:1–1 et seq., and proceed with its foreclosure of the debtor's mortgage under an exemption granted to a different type of entity which is not generally available." 122 B.R. at 238.

■ In order for estoppel to occur, Topcroft must establish that it detrimentally relied upon DnC's alleged representation that it was not a foreign bank. As the New Jersey Supreme Court explained:

> The burden of proof of a claim based on principles of equitable estoppel is clearly on the party asserting estoppel. To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representa-

---

**2.** Judge Tuohey found that, "[e]ssentially, unless such institution offers checking and savings accounts or safety deposit box service, or can act in a fiduciary capacity, it will not qualify as a foreign bank under the New Jersey statute." 122 B.R. at 237–38. As indicated, infra, the statute also includes being a fiscal agent for the United States or another body politic or corporation among the powers enumerated in the definition of a "foreign bank". See N.J.S.A. 17:9A–25. Thus to the extent that the bankruptcy court meant to exclude authorization to perform this activity from the statutory definition,

tion was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.

*Miller v. Miller*, 97 N.J. 154, 163, 478 A.2d 351 (1984) (citations ommitted). There is no evidence in the record to indicate that Topcroft changed its position in detrimental reliance on a representation made by the plaintiff. Moreover, it is not clear that there is any evidence to support the Bankruptcy Court's conclusion "that a decision was made at some point by a person in authority with DnC that it was a foreign corporation under New Jersey law rather than a foreign bank" and that DnC consequently represented that it was a foreign corporation not a foreign bank. DnC maintained in the court below and still maintains that it filed the business activities reports under the mistaken apprehension that *Bank Leumi Trust Co. v. Schneider*, 188 N.J.Super. 423, 457 A.2d 1179 (App. Div.1982), which required foreign banks to file Business Activities Reports was still good law.[3] Further, the business activities reports that DnC actually filed stated:

> DnC America Banking Corporation is a banking organization under the Banking Laws of the State of New York. Its sole contact with the State of New Jersey is certain loan and other financial transactions with borrowers situated in New Jersey. None of the transactions constitute individually or in the aggregate, the doing business in the State of New Jersey or activities not permitted for foreign banks in the State of New Jersey.

See Plaintiff's Appendix at 140. Clearly, as the Reports themselves state, DnC did not intend by its filing of Business Activities Reports in compliance with N.J.S.A. 14A:13-10, to concede that it was not a foreign bank.

Finally, Judge Tuohey stated in his opinion that "the parties agreed at oral argu-

ment that DnC does not fit New Jersey's statutory definition of a 'foreign bank' as stated in N.J.S.A. 17:9A-315." 122 B.R. at 237. However, I see no support in the record for such a conclusion. The plaintiff denies that it made any such concession at oral argument. The defendant cites as proof of this conclusion a section of the transcript of the oral arguments before the Bankruptcy Court in which plaintiff's attorney agreed that while DnC is not registered as an investment company in New Jersey "it could be tomorrow". See Plaintiff's Appendix at 384a. However, the transcript makes clear that plaintiff's attorney did not concede that because DnC could conceivably qualify for registration as an investment company it was not a foreign bank; rather, he was arguing that the New Jersey definition of "foreign bank", based as it is on the possession of some or all of the listed powers, is broad enough to encompass certain institutions that could qualify as investment companies under the New Jersey Investment Company Act as well as traditional banking institutions. Thus, I am forced to conclude that the Bankruptcy Court's factual determination that DnC held itself out solely as an investment company until it sought to institute foreclosure proceedings against Topcroft is unsupported by the record and therefore "clearly erroneous". Moreover there is no basis for its legal conclusion that DnC is estopped from asserting that it is a foreign bank within the meaning of N.J.S.A. 17:9A-315 as none of the elements of estoppel were demonstrated or proven.

In conclusion, this issue must be remanded to the Bankruptcy Court for a determination of whether DnC was indeed authorized under New York law to exercise some of the powers enumerated in N.J.S.A. 17:9A-315. If DnC is found to be authorized to engage in any of the enumerated activities, it must be found to be a "foreign bank" within the meaning of N.J.S.A. 17:9A-315.

this legal conclusion is incorrect and must be reversed.

**3.** I note that this decision was subsequently overruled by the New Jersey Supreme Court in *American Bank & Trust Co. of Pennsylvania v.*

*Lott,* 99 N.J. 32, 490 A.2d 308 (1985), which held that the Reporting Act was not intended by the Legislature to apply to foreign banks, thus they are exempt from the reporting requirements. Id. at 41, 490 A.2d 308.

■ As a foreign bank DnC would be governed by the New Jersey Banking Act, N.J.S.A. 17:9A–1 et seq.[4] This act limits the type of business a foreign bank may perform within the state of New Jersey. It provides in pertinent part:

A. No foreign bank organized under the laws of a foreign government shall transact any business in this State.

B. A foreign bank, other than one excluded by subsection A of this section, may transact business in this State only as an executor or a testamentary trustee or guardian, and then only when named in a decedent's will or codicil thereto. Before transacting such business in this State, a foreign bank shall secure from the commissioner a certificate of authority to transact such business.

N.J.S.A. 17:9A–316. Failure to obtain a certificate prior to acting as a fiduciary within the state of New Jersey or otherwise transacting business in violation of the provisions of the Act bars the foreign bank's access to the New Jersey courts and is a misdemeanor. N.J.S.A. 17:9A–330. However, the Act specifically exempts actions by foreign banks to enforce an obligation made outside New Jersey brought in New Jersey courts.[5] See N.J.S.A. 17:9A–318, –330, –331. Section 17:9A–331, entitled "Exempt Transactions" provides in pertinent part:

Nothing in this article shall prohibit a foreign bank from. . . .

(3) enforcing in this State obligations heretofore or hereafter acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraph (1) or (2) of this section.

N.J.S.A. 17:9A–331. Thus assuming that DnC is found to be a foreign bank, its ability to maintain an action to foreclose upon mortgaged property turns upon whether the action arises out of its transaction of business in New Jersey or out of state.

The Bankruptcy Court apparently did not make any findings about whether this loan negotiated and signed in New York and secured by real property in New Jersey was a New Jersey transaction or occurred in some other state. The case must be remanded for findings on this issue. If the loan and the obligations which arose from it are found to have occurred in New York or elsewhere outside the state of New Jersey then DnC is free to bring an action to foreclose on the property that secured the loan in the New Jersey courts pursuant to the statutory exemption found in N.J.S.A. 17:9A–331. If, however, the loan is found to have been made in New Jersey, it appears that this would be an impermissible transaction of business within the state pursuant to N.J.S.A. 17:9A–316; and thus DnC would indeed be barred from enforcing this obligation in the New Jersey courts. See N.J.S.A. 17:9A–330.[6]

**4.** In *American Bank & Trust Co. of Pennsylvania v. Lott*, 99 N.J. 32, 490 A.2d 308 (1985) the New Jersey Supreme Court held that the New Jersey Business Corporation Act, N.J.S.A. 14A:13–1 et seq., which precludes foreign corporations from maintaining actions or proceedings in New Jersey courts "until such corporation shall have obtained a certificate of authority" does not apply to foreign banks. Id. at 37, 490 A.2d 308. See N.J.S.A. 14A:13–11. The New Jersey Supreme Court also held in this case that the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13–14 et seq., which requires foreign corporations to file reports providing the State of New Jersey with specified information, does not apply to foreign banks. *American Bank & Trust* at 37, 490 A.2d 308.

**5.** I note that this section also specifically allows foreign banks to dispose of property "assigned, transferred, mortgaged or conveyed to it as security for, or in whole or part satisfaction of a

loan or loans made by it in the transaction of business outside of this State ..." N.J.S.A. 17:9A–331.

**6.** The Banking Act precludes foreign banks from enforcing in New Jersey courts obligations arising from the transaction of business in New Jersey in violation of its provisions and provides that for a foreign bank to engage in transactions within the state of New Jersey in violation of the Act is a misdemeanor. N.J.S.A. 17:9A–330. The act does not specifically void such transactions; however it does not contain a savings clause similar to that contained in the Business Corporations Act stating that failure to comply does not impair any contract. See N.J.S.A. 14A:13–11(2). However, as it is not clear from the record whether DnC is indeed a foreign bank under New Jersey law or whether the transaction is a permissible transaction of business within the State of New Jersey by a foreign

### DnC's Status as an Investment Company

■ Judge Tuohey found that DnC is "more like an investment company as such is defined in N.J.S.A. 17:16A–1" than like a foreign bank. 122 B.R. at 238. The New Jersey Investment Company Act defines an "investment company" as:

any corporation, foreign or domestic, any partnership or any individual which engages principally in an investment business as defined in this section.

N.J.S.A. 17:16A–1(a). The Act defines "investment business" as

the business of making, issuing or guaranteeing investment contracts, but does not include the business of any mortgage guaranty corporation, bank, trust company or other corporation of this State incorporated under any general or special law which makes insurance against or guarantees against, loss by reason of nonpayment of principal or interest on bonds and mortgages, or any corporation authorized to do life insurance business in this State.

N.J.S.A. 17:16A–1(c). See also *Daoud v. Kleven Investment Co., Inc.*, 30 N.J.Super. 38, 103 A.2d 257 (Ch. 1954) (holding this statute applies only to companies who make, issue, or guarantee investment contracts.) An "investment contract" is defined as:

any agreement, certificate, instrument or other writing containing an undertaking by the company making, issuing or guaranteeing the same to pay the holder thereof, or his assignee, or his personal representative, a stated or determinable maturity value in cash or its equivalent on a fixed or determinable date, the consideration for which consists of the payment to the company of payments, deposits, dues, installments, or a single sum, according to a plan fixed by the contract, regardless of whether the holder is entitled to share in the profits or earnings of the issuer.

N.J.S.A. 17:16A–1(b).

DnC, as indicated above, is organized under Article XII of the Banking Law of the State of New York. Pursuant to this statute, while a New York investment company may borrow and lend money secured by a mortgage on real property located either inside or outside New York, it may not make, issue or guarantee investment contracts. New York Banking Law §§ 508–09. Thus by law DnC does not meet the definition of an investment company contained in the New Jersey Investment Company Act and cannot be considered an investment company. In consequence, to the extent that the Bankruptcy Court found that DnC is an investment company under New Jersey law, this legal conclusion is incorrect and must be reversed.

### DnC's Status as a Foreign Corporation

The Bankruptcy Court found that DnC held itself out as a foreign corporation under New Jersey law and was "estopped" from "assert[ing] a different identity in this state in order to evade the effect of its failure to register under the Corporations Act, N.J.S.A. 14A:1–1 et seq.". 122 B.R. at 238. The defendant, Topcroft, argues that the Bankruptcy Court's finding that DnC is estopped from asserting that it is a foreign bank should be upheld. Topcroft Brief at 23. Topcroft also argues that if DnC "is not found to be an unregistered foreign investment company, DnC must be deemed a foreign corporation that never saw fit to register to do business in the Garden State nor file a Business Activities Report since 1988." Id. at 26. DnC contends that while it may meet the definition of a foreign corporation, it is a foreign bank and as such it is subject only to the provisions of the Banking Act and has been exempted from complying with the Business Corporation Act and the Business Activities Reporting Act. DnC Brief at 20.

■ As I have found that DnC cannot be considered an Investment Company under New Jersey law, if DnC is found to be outside the New Jersey statutory definition of a foreign bank it must be deemed to be a foreign corporation. In New Jersey a "foreign corporation" is defined as "a corporation for profit organized under laws of a

bank, I need not reach this issue at this juncture.

jurisdiction other than this State for a purpose or purposes for which a corporation may be organized under this Act." N.J.S.A. 14A:1–2.1(i). The purposes for which a corporation may be authorized in New Jersey include "any lawful business purpose or purposes except to do in this State any business for which organization is permitted under any other statute of this State unless such statute permits organization under this Act." N.J.S.A. 14A:2–1. From the record before me it is clear that DnC was found by the Bankruptcy Court to have been "incorporated as a bank under the laws of the State of New York." As such DnC was organized for profit to pursue the lawful business purposes listed in New York Banking Law § 508 and is consequently well within this definition. 122 B.R. at 237.

Two Acts governing foreign corporations are pertinent to the instant case, the Business Corporation Act, N.J.S.A. 14A:1–1 et seq., which applies to both foreign and domestic business corporations and the Business Activities Reporting Act, N.J.S.A. 14A:13–14 et seq., which endeavors to secure certain information about foreign corporations for the New Jersey Division of Taxation. Neither statute applies to foreign banks. See *American Bank & Trust Co. v. Lott*, 99 N.J. 32, 37, 490 A.2d 308 (1985); note 4, supra.

The Business Corporation Act prohibits a foreign corporation transacting business within New Jersey from maintaining an action in New Jersey courts until it obtains a certificate of authority from the Secretary of State. The statute states in pertinent part:

> No foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority.

N.J.S.A. 14A:13–11(1). The Act requires a foreign corporation transacting business without such a certificate to pay a penalty to the State for each day it transacts business in violation of the statute. N.J.S.A. 14A:13–11(3). However, the Act specifically provides that transacting business within New Jersey without a certificate does not void any contract entered into:

> The failure of a foreign corporation to obtain a certificate of authority to transact business in this State shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action or proceeding in any court of this State.

N.J.S.A. 14A:13–11(2).

The Business Activities Reporting Act requires that foreign corporations deriving income or receiving payment from sources within the state of New Jersey file reports providing the New Jersey Division of Taxation with certain information. N.J.S.A. 14A:13–15. Similarly, this Act precludes resort to the New Jersey courts by a foreign corporation until it files the necessary reports.[7]

---

**7.** The statute provides:

a. No foreign corporation carrying on any *activity or owning or maintaining any property* in this State which has not obtained a certificate of authority to do business in this State and disclaims liability for the corporation business tax and the corporation income tax shall maintain any action or proceeding in any State or Federal court in New Jersey, until such corporation shall have filed a timely notice of business activities report.

b. The failure of a foreign corporation to file a timely report shall prevent the use of the courts in this State for all contracts executed and all causes of action that arose at any time prior to the end of the last accounting period for which the corporation failed to file a required timely report.

c. The court in which the issues arise shall be granted the power to excuse the corporation for failure to file a report when due, and restore the right of access to the courts of this State. Such a failure to file a report may be excusable where the court finds the corporation has sustained the burden of establishing that

(1) the failure to file a timely report was done in ignorance of the requirement to file, such ignorance was reasonable in all circumstances: and

(2) all taxes, interest and civil penalties due the State for all periods have been paid, or provided for by adequate security or bond ... before the suit may proceed.

N.J.S.A. 14A:13–20. However, in *First Family Mortgage Company v. Durham* 108 N.J. 277, 528 A.2d 1288 (1987), the New Jersey Supreme

In the instant case, the Bankruptcy Court did not make any findings about whether DnC complied with the Business Reporting Act; however, Judge Tuohey apparently found that DnC failed to obtain a certificate of authority. 122 B.R. at 239. The Court concluded that because of DnC's failure to obtain a certificate of authority the lender "may not be heard in state court on a request to enforce obligations of New Jersey residents." 122 B.R. at 239.

Even if DnC failed to comply with the requirements of N.J.S.A. 14A:13–11 and obtain a certificate and/or failed to file Business Activities Reports pursuant to N.J.S.A. 14A:13–20, this failure does not totally bar DnC from enforcing its contract in a New Jersey court. Rather, pursuant to the clear statutory language of the Business Corporation Act and the New Jersey Supreme Court's interpretation of the Business Activities Reporting Act, DnC is simply barred from enforcing any contract made until it obtains a certificate of authority and files the necessary Business Activities Reports. At this point DnC would be free to bring an action in New Jersey courts. Accordingly, to the extent the Bankruptcy Court held that the mortgage was rendered invalid by a failure on the part of DnC to comply with N.J.S.A. 14A:13–11 and –20, this legal conclusion is contrary to law and must be reversed. This case should be remanded for a determination of whether DnC has actually complied with N.J.S.A. 14A:13–11 and –20. If DnC is required to and has not complied with these statutes, the proceedings should be stayed until DnC obtains a certificate of authority and/or complies with the Business Activities Reporting Act.

The Bankruptcy Court's Determination that the Mortgage is Void

The Bankruptcy Court held that not only was DnC barred from enforcing the mortgage but the mortgage itself was void and the debt unsecured. 122 B.R. at 240. The Court reasoned that the fact that the Business Corporation Act, the Investment Company Act and the Banking Act all make companies doing business in New Jersey in violation of these statutes guilty of a misdemeanor, evidences a clear intent on the part of the legislature to make such business illegal. Judge Tuohey, relying on *In re Kennerly*, 90 B.R. 781 (Bankr.D.S.C. 1987), explained that:

> the law will not permit the party doing business in violation of the law to profit from the illegal contract resulting therefrom and the contract, together with all other documents executed therewith or in furtherance thereof are void,

and concluded that the mortgage was therefore void and unenforcable. 122 B.R. at 240. However, in *In re Kennerly* the mortgage itself was obtained in violation of a host of federal statutes and regulations prohibiting self-dealing and misrepresentations. The Court, concluding that the mortgage would not exist but for the violations of federal laws and regulations refused to enforce the mortgage because to do so would "be in furtherance of the violations". 90 B.R. at 792. This case is clearly inapposite. In the present case the creation of the mortgage and the collateralization of the loan were completely legal and the only possible illegality was the alleged failure to comply with the applicable New Jersey licensing and information gathering statutes. Moreover, in this case, the very statutes allegedly violated contain a "savings clause" stating that non-compliance does not result in the voiding of any contracts or acts, but simply prevents access to the courts until the statutory provisions are complied with. See N.J.S.A. 14A:13–

Court struck down provision (b) because it unconstitutionally precluded a foreign corporation which had complied with the provisions of the Act from using the New Jersey courts to pursue any cause of action arising "at any time prior to the end of the last accounting period for which the corporation failed to file a timely report." N.J.S.A. 14A:13–20(b). The Court explained:

> that the state can require a foreign corporation to file an activities report and can withhold access to courts *until* the corporation complies. However, once a foreign corporation files an activities report and meets the requirements of N.J.S.A. 14A:13–20(c)(2), the commerce clause requires that the corporation be allowed to pursue any cause of action existing at the time of filing (or accruing during that reporting period) regardless of when it arose.

108 N.J. at 279, 528 A.2d 1288.

11(2), –20; *First Family*, 108 N.J. at 279, 528 A.2d 1288. It is clear that even assuming that DnC failed to comply with any or all of the registration provisions of the Business Corporation Act or the Business Activities Reporting Act, this failure does not render the mortgage invalid, but simply bars DnC's access to the New Jersey Courts until it complies with the provisions.[8] Thus the Bankruptcy Court's legal determination that the mortgage is void and unenforceable must be reversed as contrary to law and the case remanded for a determination of which statutory scheme applies to DnC and then stayed pending DnC's compliance with the applicable statute.

### III. *Relief From the Automatic Stay*

After finding the plaintiff's mortgage void and declaring the claim of DnC to be an unsecured claim without priority, the Bankruptcy Court denied DnC's motion for relief from the automatic stay in effect pursuant to 11 U.S.C. § 362(d). As I find that the mortgage is not void, but in the worst case unenforceable until DnC complies with the statute deemed applicable to it on remand, DnC's argument for relief from the stay must be more seriously considered.

A party is entitled to relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code, which provides in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (A) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the Debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(a). In the instant case, the Bankruptcy Court made no findings about whether DnC's interest is adequately protected, whether Topcroft has any equity in the property, or about whether the property is necessary for an effective organization. Thus the case must be remanded to the Bankruptcy Court to make these factual findings and to determine whether relief from the automatic stay is appropriate.

Finally, both Topcroft and the Trustee in Bankruptcy argue that several factual issues pertaining to Topcroft's counterclaims against DnC were not addressed by the Bankruptcy Court and thus that remand on these issues is appropriate. Topcroft has filed two counterclaims against DnC claiming that: 1) DnC made an illegal loan to Topcroft and 2) Topcroft was under the control and was the alter ego of DnC. The charge that DnC made an illegal loan is apparently based on the allegation that DnC was acting without a certificate of authority as required by the Business Corporation Act. In consequence, this counterclaim does not seem to raise any issues beyond those presented by

---

8. I note that Topcroft cites several other cases in which mortgage liens were held to be unenforceable due to the failure of the lender to comply with specific statutes or regulations governing the transaction. However, these cases are inapposite as well because the statutes the lender violated in these cases directly prohibited or voided mortgages taken in violation of their provisions. In contrast, both the Business Corporation Act and the Business Activities Reporting Act which the lender allegedly violated in the instant case have been interpreted to specifically prevent the impairment of any contract entered into or act taken in the absence of compliance with the registration provisions. See *In re Lake Hopatcong Water Corporation*, 15 B.R. 411 (Bkrtcy.D.N.J.1981) (holding a mortgage on the property of a public utility was void where it was made in violation of a statute requiring authorization by the Board of Public Utility Commissioners and providing in pertinent part, "every ... mortgage ... encumbrance ... made in violation of this section shall be void." N.J.S.A. 48:3–7); *Grove v. First National Bank of Herminie*, 489 F.2d 512 (3rd Cir.1973) (holding that a mortgage made in violation of a statute that provided in pertinent part that "every contract made in violation of [the statute] or of any rule or regulation thereunder ... shall be void ..." 15 U.S.C. § 78cc(b)). See also *Oxford Consumer Discount Co. v. Stefanelli*, 55 N.J. 489, 262 A.2d 874 (1970); *Moran v. American Funding, Ltd.*, 238 N.J.Super. 263, 569 A.2d 841 (1989).

the merits of DnC's foreclosure claim and remand is appropriate to the extent indicated in the discussion of the foreclosure claim, infra. However, Topcroft's charge that it was effectively DnC's alter ego does raise additional issues, none of which the Bankruptcy Court reached. In consequence, this counterclaim must be remanded to the Bankruptcy Court for a determination of whether DnC assumed control of Topcroft.

Conclusion

In conclusion, I find that the Bankruptcy Court's decision holding the mortgage void, dismissing the foreclosure complaint, granting partial summary judgment and denying relief from the automatic stay must be reversed and the case must be remanded to the Bankruptcy Court for further proceedings consistent with this Opinion. In particular, the Bankruptcy Court must determine 1) whether DnC was engaged in purely interstate commerce or was transacting business in New Jersey; 2) whether DnC is a foreign bank within the meaning of the Banking Act, N.J.S.A. 17:9A–1 et seq. and as such is only governed by this statute, or whether DnC is a foreign corporation governed by the Business Corporation Act, N.J.S.A. 14A:1–1 et seq. and the Business Activities Reporting Act, N.J.S.A. 14A:13–14 et seq.; and 3) whether relief from the automatic stay is appropriate. In order to determine whether DnC is a foreign bank under New Jersey law and may proceed with its foreclosure action, the Bankruptcy Court must decide whether DnC is authorized under New York law to perform any of the functions listed in N.J.S.A. 17:9A–315 and whether the loan transaction and the obligations which arose from it originated in New Jersey or can be deemed to be an out of state transaction.

If DnC is found to be outside the definition of a foreign bank under New Jersey law it must be considered a foreign corporation. The Bankruptcy Court must stay the proceedings on remand until the Court determines that DnC has fully complied with the provisions of the Business Corpo-ration Act and the Business Activities Act, if applicable.

Finally, the Bankruptcy Court must determine whether relief from the automatic stay is appropriate. The Court must determine whether DnC's debt is adequately protected, whether Topcroft has any equity in the property, whether the property is necessary for an effective reorganization, and whether Topcroft was under DnC's control.

ORDER

This matter having come before the court on an appeal by the plaintiff-appellant, DnC America Banking Corporation ("DnC"), of two Orders of the United States Bankruptcy Court for the District of New Jersey, the Honorable William F. Tuohey presiding, the first granting the defendant-respondent, Topcroft's motions to dismiss and for partial summary judgment and to invalidate DnC's mortgage lien and the second denying DnC's motion for relief from the automatic stay; and this Court having considered the submissions of the parties, the Opinion of the Bankruptcy Court, and the entire record; and for the reasons set forth in the Opinion issued this same day; and for good cause shown:

IT IS on the 10th day of December, 1991,

ORDERED that the United States Bankruptcy Court's Order granting defendant-respondent, Topcroft's motions to dismiss and for partial summary judgment and to invalidate DnC's mortgage lien is hereby REVERSED; and it is further

ORDERED that the United States Bankruptcy Court's Order denying DnC's motion for relief from the stay is hereby REVERSED; and it is further

ORDERED that the case is hereby REMANDED for further proceedings consonant with the Opinion in this matter issued by this Court this same day.